# MARY LINDSAY CORREA *v.* WAIAKEA MILL COMPANY.

## No. 1873.

ARGUED DECEMBER 6, 1929.                    DECIDED FEBRUARY 28, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action of trover. On March 8, 1920, the defendant entered upon the plaintiff's premises and cut and removed therefrom a crop of sugar cane. Subsequently the cane was processed into sugar and molasses which the defendant sold. The money realized from the sale was kept by the defendant and no part of it has been paid to the plaintiff. The unlawful character of the entry and conversion is not denied. The principal dispute between the parties, therefore, is not as to the defendant's liability but as to the amount of damages awarded the plaintiff by the jury, this amount, consisting of principal and interest,

being $12,658.20. The defendant excepted to the verdict and moved for a new trial on the ground that it was contrary to the law and the evidence and the weight of the evidence. The motion was overruled and the defendant again excepted.

The measure of the defendant's liability depends on the motives which prompted it to commit the trespass. If it was committed in good faith and under an honest belief by the trespasser that it had a right to enter the premises and remove the cane the measure of its liability is the value of the cane itself as it stood in the field. On the other hand, if the trespass was committed wilfully and in reckless disregard of the plaintiff's rights the measure of the defendant's liability is the value of the sugar and molasses into which the cane was finally manufactured. The two rules for the admeasurement of damages are thus stated in *United States* v. *Homestake Mining Co.,* 117 Fed. 481, 482: "The measure of damages for the reckless, wilful, or intentional taking of ore or timber from the land of another without right is the enhanced value of the ore or timber when it is finally converted to the use of the trespasser. But the limit of the liability for damages of one who takes ore or timber from the land of another without right through inadvertence or mistake, or in the honest belief that he is acting within his legal rights, is the value of the ore in the mine or the value of the timber in the trees."

The defendant contends that, as a matter of law arising out of the uncontradicted evidence, it is only liable for the smaller measure of damages. More specifically, it contends that prior to the commission of the trespass it had expended the sum of $2575.28 in the care and cultivation of the cane which it removed and that it honestly believed that under a certain contract between itself and the commissioner of public lands it had a lien on the cane

for these expenditures and that its sole purpose in entering the plaintiff's premises and removing the cane was to protect the rights which it believed it had. This contention is, of course, supplemented by the further contention that its belief and purpose were established by uncontradicted evidence which the jury had no right to disregard and the conclusion is drawn that the verdict, being in excess of the value of the cane, was erroneous and should be set aside.

It must be borne in mind that in passing on this contention we are not dealing with the question of whether the defendant in fact had a lien. That question was eliminated by the defendant's concession, made at the trial and adhered to here, that it had no lien. This concession was made in answer to plaintiff's objection to the introduction in evidence of the contract between the defendant and the commissioner of public lands out of which the lien, if there had been one, would have arisen. In this connection defendant's counsel stated: "Let me say, your Honor, the Waiakea Mill Co. is not going to put forward the claim that it had an absolute lien; they have been advised otherwise; they have taken that advice. I shall not insist upon that and I want the court and counsel to understand. My sole purpose in offering this contract is on the question of innocent taking under a claim of right." So that the question before us is whether it can be said that the defendant's belief that it had a lien and that its only motive in entering the plaintiff's premises and removing the cane was to protect the rights it believed it had were so conclusively established by the evidence that a contrary finding by the jury was, as a matter of law, unauthorized.

It is shown by the undisputed evidence that the land upon which the trespass was committed was formerly a part of the public domain and was embraced within the ahupuaa of Waiakea in the district of Hilo on the Island

of Hawaii. It had been leased by the Territory to the defendant, Waiakea Mill Company, and had been used by the company for the cultivation of sugar cane. It was contemplated by the government that the land would upon the expiration of the lease be devoted to homestead purposes. On June 14, 1918 (during the period of the world war), the President of the United States issued a proclamation authorizing the commissioner of public lands of the Territory of Hawaii, with the approval of the governor, "to enter into all necessary contracts with the lessees of any of said government lands, the leases of which have expired or which, while this proclamation is in force, will expire, * * * for the continued cultivation of said lands, until such time as the same shall be occupied and cultivated by homesteaders." By virtue of this authorization the Territory, on the 12th day of August, 1918, entered into a contract with the Waiakea Mill Company for the continued use by it, for the purpose of growing sugar cane, of the lands described in the contract. It appears from the contract that the land was about to be opened for homestead purposes. In view, no doubt, of the use to which the land was about to be put it was stated in the contract that the Waiakea Mill Company "shall continue the work under this contract until notified in writing by the commissioner that the homesteader is ready to take over the actual cultivation of his lot under his special homestead agreement."

On March 14, 1919, a homestead agreement relating to Lot 1409 (this being one of the Waiakea homestead lots) was entered into between the commissioner of public lands and one Kikuyo Fujii. At this time there was on this lot a growing crop of sugar cane which had been planted and cultivated by the mill company. On March 31, 1919, the commissioner in a letter addressed to the mill company notified it to cease cultivation on this lot except under

arrangement with the homesteader, to which notice the company yielded immediate obedience. On May 8, 1919, the commissioner, in a letter addressed to Kikuyo Fujii, informed her that the 1919 crop of cane which was on her homestead at the time of its selection had been harvested and that she should take immediate steps for the cultivation of her lot and that she must begin her residence thereon within ninety days from the date of the letter. Kikuyo Fujii, however, did none of the things required of her by the commissioner and by her contract and therefore entirely forfeited her rights as a homesteader.

On March 5, 1920, Lot 1409 being then again open for homesteading, the plaintiff herein entered into a contract with the commissioner of public lands for its purchase. At the time this contract was executed there was on the lot a "scrub" crop of cane (presumably a ratoon crop) which had reached maturity. It had, since March 31, 1919, when the mill company had in obedience to the notice given by the commissioner ceased cultivation, remained uncultivated and without attention. Under the provisions of her contract the plaintiff acquired the right to immediately occupy this lot and also acquired, expressly subject to a lien in favor of the mill company, the ownership of the crop of cane standing on it.

Prior to the time it received notice to cease cultivation the defendant had expended in cultivating and fertilizing Lot 1409 the sum of $2575.28. The contract between the mill company and the commissioner of public lands contains the following provision: "The actual cost as apportioned of all work done under this contract, including interest thereon, as provided in section 4 hereof, chargeable against any homestead, shall constitute and be a prior lien in favor of the planter upon the existing crop on any such homestead, and upon any and all succeeding crops thereon, until the same shall have been satisfied, subject only

to any government lien for taxes or assessments." This contract also provides: "As soon as may be, after any portion of the land covered by this agreement shall be subdivided into homesteads, and the commissioner shall have notified the planter, as provided in section 6 hereof, that any homesteader or homesteaders is or are ready to take over the actual cultivation of his or their homestead or homesteads, the total actual cost, as defined in section 2 hereof, shall be apportioned by the commissioner, subject to final determination, in case of dispute, as provided in section 11 hereof, between the said homesteads and/or between the said homesteads and any portion of said tract not homesteaded, in proportion to their planted area." It is undenied that the commissioner never made the apportionment referred to in this section and therefore it is conceded that the mill company had no lien for the expenditures it had made on the crop of cane which it removed.

David McHattie Forbes, who was at the time of the trespass the manager of the defendant corporation and who was called as a witness on behalf of the defendant, testified on direct examination as follows: "Q. What was the purpose of your cutting this cane from Lot 1409? What was the purpose of it?" "A. The purpose was to take the crop off that field, along with the rest of them, which in the course of our regular harvesting operations had to be done. Q. Had the Waiakea Mill Company any interest? A. Yes, we had some money at stake; in other words, we considered we had a lien on that property. Q. You had a lien on that property? A. Yes. Q. Under what contract? A. Under the contract with the government. Q. August 12, 1918? A. Yes. Q. What was the purpose of your cutting the cane from that land? A. In order to get back some of the money we had up there; in order to protect our lien. Q. In order to protect your lien? A. Yes." This witness also testified con-

cerning his knowledge of the contract of August 12, 1918, as follows: "Q. Now, Mr. Forbes you had some acquaintance with this contract with the government of August, 1918,—August 12, 1918? A. What was the first? Q. You were acquainted with that contract? A. Yes, very familiar with it at that time." (The time referred to was prior to the commission of the trespass.) On cross-examination this witness testified as follows: "Q. When that contract was made of August 12, 1918, you were the manager then? A. I was. Q. And I believe you said that you were quite familiar with the contract? A. I was at that time. Q. And its terms; it was your business as manager of the plantation to be familiar with it? A. Yes. Q. Who was the company's attorney? Mr. Carlsmith: Objected to as immaterial, your Honor. The Court: Sustained. Mr. Metzger: Exception. Mr. Metzger: Q. Did the company's attorney, whoever he was, or any of its officers ever explain the contract, the meaning of it to you, this contract of August 12, 1918, Exhibit 'D'? A. I have no particular recollections of any of the officers or attorneys or anyone else in Waiakea Mill going over any particular part or parts of the contract specifically. I don't doubt that when something arose that I didn't understand I probably appealed to somebody else for assistance but I have no recollection. Q. You recollect of ever asking for any advice or explanation in the matter? A. No recollection. Q. Well, is it your recollection that they left the matter to you and to your construction? A. Yes, I recollect nothing other. Q. Were you in frequent communication during that time with the officers of the plantation? A. Yes, weekly at least. Q. And the company's attorney, legal officer? A. That I have no recollections, the company's attorney; in fact, today I could not tell you who they were at that time."

We think in this state of the evidence it cannot be said that the defendant's good faith was proven beyond reasonable dispute and we therefore are not justified in deciding, as a matter of law, that the verdict was excessive. It is true that Forbes testified that he, as manager of the company, believed that the defendant had a lien and that the only purpose of the defendant in entering the premises and removing the cane was to protect its lien. But he also testified that before such entry and removal he was thoroughly familiar with the contract of August 12, 1918, which definitely prescribed the conditions necessary to the creation of a lien. In view of this admitted previous familiarity with the contract, was it not the province of the jury and not of the court to say whether Forbes' testimony that at the time the trespass was committed he believed the defendant had a lien was credible? In other words, would the jury not have been within its rights to say, if the defendant's manager was thoroughly familiar with the contract, as he testified he was, the only reasonable conclusion is that he then knew that the defendant had no lien and therefore his testimony that at the time the trespass was committed he believed the defendant had a lien is incredible? We think it would. The general rule that it is solely the province of the jury to pass on the credibility of witnesses and to weigh their testimony is clearly applicable. Moreover, Forbes testified that before entering the plaintiff's premises and removing the cane he did not seek or obtain legal advice as to whether the defendant had a lien but acted entirely on his own belief. We think this was a circumstance which the jury had a right to consider together with all of the other evidence in determining what the defendant's motive was.

In *Durant Min. Co.* v. *Percy Consol. Min. Co.,* 93 Fed. 166, 167, the court said: "It is the duty of every one to exercise ordinary care to ascertain the boundaries of his

own property, and to refrain from injuring the property of others; and a jury may lawfully infer that a trespasser had knowledge of the right and title of the owner of the property upon which he entered, and that he intended to violate that right, and to appropriate the property to his own use, from his reckless disregard of the owner's right and title, or from his failure to exercise ordinary care to discover and protect them." Many authorities are cited by the court in support of this obviously sound principle.

We think this principle is just as applicable to the defendant's failure in the instant case to obtain legal advice as to whether it had a lien before entering the plaintiff's premises and removing the cane as it was to the failure of the defendant in the case just cited to ascertain the boundaries of its property before removing the ore. In either case such failure was a proper circumstance to be considered by the jury in determining whether the trespass was committed in reckless disregard of the plaintiff's rights or innocently committed.

The defendant also claims that the court below erred in giving certain instructions at the plaintiff's request and in refusing to give certain instructions requested by the defendant. The first of these instructions, given on behalf of the plaintiff, which we will notice, is as follows: "You are instructed that good faith means an honest and innocent purpose, free from knowledge of circumstances or facts which ought to put a person upon inquiry as to the rights of others. The burden of proving inquiry as to the innocence rests upon the defendant and in a case of trespass and conversion it relates only to the measure of damages to be awarded." This instruction should not have been given. It makes freedom from knowledge of circumstances or facts which ought to put a person upon inquiry as to the rights of others a necessary element of good faith. Conversely, it makes knowledge of circum-

stances or facts which ought to put a person upon inquiry as to the rights of others bad faith as a matter of law. This is not true. Knowledge of such facts or circumstances may be considered by the jury in deciding that the defendant acted in bad faith, and likewise, the absence of such knowledge may be considered by the jury in deciding that the defendant acted in good faith. But neither such knowledge nor its absence is, as a matter of law, conclusive of the defendant's motive.

There is another vice in this instruction. The statement that "the burden of proving inquiry as to the innocence rests upon the defendant and in a case of trespass and conversion it relates only to the measure of damages to be awarded" was, under the circumstances of this case, incomplete and meaningless and could only serve to confuse the jury. The presiding judge did not in any part of his instructions inform the jury what measure of damages to apply if it believed the trespass was committed in bad faith, that is, without an honest belief that it had a lien. In the absence of such an instruction the last-quoted portion of the instruction under review was without significance and confusing.

There is another instruction that was given at the plaintiff's request which we think perhaps should have been refused. It is as follows: "You are instructed that if you believe from the evidence in this case that the defendant wilfully and knowingly went upon plaintiff's homestead lot No. 1409, during the month of March, 1920, as alleged in plaintiff's complaint, for the purpose and with the intent to cut down, carry away and convert into raw sugar and molasses the sugar cane growing and standing upon said premises, and with the intent to sell and dispose of the sugar and molasses to be by it manufactured from said sugar cane and convert the proceeds to its own use and benefit, and that it did so take the said

sugar cane crop and turn it into raw sugar and molasses and ship and sell the said products and appropriate the proceeds of such sale or sales to its own use and benefit, then, I charge you that the plaintiff is entitled to recover of and from the defendant the full value of said sugar cane crop." While we are unwilling to say with certainty that it was error to give this instruction we think there is sufficient doubt of its correctness to justify us in suggesting that in the event of another trial it be not given. It is not inconceivable that a jury of laymen might understand that the phrase "full value of said sugar cane crop," taken in connection with the context, meant the value of the final product into which the cane was manufactured and upon that understanding return a verdict for the higher measure of damages. Such a verdict, if based on the hypotheses indicated in this instruction, would obviously be erroneous.

For the error above pointed out the verdict and the judgment are set aside and a new trial is granted.

*C. S. Carlsmith* and *C. W. Carlsmith* (also on the briefs) for plaintiff in error.

*D. E. Metzger* (*A. G. Correa* with him on the brief) for defendant in error.