UNITED STATES v. HOMESTAKE MIN. CO.

(Circuit Court of Appeals, Eighth Circuit.   August 25, 1902.)

No. 1,710.

1. TRESPASS—CUTTING TIMBER—MEASURE OF DAMAGES—WILLFUL AND INNO-
CENT TRESPASSERS.

The measure of damages for the willful or intentional taking of ore
or timber from the land of another without right is the enhanced
value of the ore or timber when it is finally converted to the use of
the trespasser.   But the limit of the liability for damages of one who
takes ore or timber from the land of another through inadvertence or
mistake, or in the honest belief that he is acting within his legal rights,
is the value of the ore in the mine or the value of the timber in the
trees.

2. WILLFUL TRESPASS—ELEMENTS.

The test which determines whether one was a willful or an innocent
trespasser is not his violation of or compliance with the law, but his
honest belief and actual intention at the time he committed the tres-
pass, and neither a justification of his acts nor any other complete
defense to them is essential to establish the fact that he was not a
willful trespasser.

3. GOOD FAITH—ADVICE OF REPUTABLE COUNSEL—EVIDENCE.

The fact that one acted on the advice of reputable counsel is per-
suasive evidence of his good faith.   And one who honestly follows
the erroneous advice of such counsel upon questions of legal right
concerning which a layman would hardly have actual knowledge is
not chargeable with bad faith, or with the willful intent to commit a
wrongful act, because his counsel was mistaken in his view of the
law.

4. EVIDENCE—FORMS OF TAKING AND CERTIFYING—WAIVER.

Parties may by stipulation, or by silent acquiescence in the intro-
duction of evidence of the statement or affidavit of a person, waive
the right and opportunity to cross-examine him, and the prescribed
forms for taking and certifying his testimony; and when this is done
his statement or affidavit becomes as competent evidence of the facts
it details as it would be if every formality had been observed.

5. PLEADING—GENERAL DENIAL—MITIGATION OF UNLIQUIDATED DAMAGES—AD-
MISSIBILITY OF EVIDENCE.

Evidence to reduce or mitigate the damages is generally admissible
under the general denial in actions for unliquidated damages for
torts.   In an action for a willful trespass for cutting and converting tim-
ber a defendant may prove, under the general denial in its answer, that
the trespass was not willful, but was committed in the honest belief
that it was exercising its legal right.

6. EVIDENCE—PRESUMPTION—REBUTTAL—INSTRUCTION.

A disputable presumption may be so completely overcome by sub-
sequent evidence in a case that it will become the duty of the court
to instruct the jury that it cannot prevail.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District
of South Dakota.

This was an action for the conversion of lumber and cord wood cut and
removed from the Black Hills forest reserve of the United States, and used
by the Homestake Mining Company, a corporation, in conducting its mining
operations.   In its complaint the United States alleged that between Septem-
ber 18, 1898, and May 1, 1899, the defendant, "without any permit or author-
ity from the secretary of the interior, or without any authority at all,"
willfully cut and removed from the Black Hills forest reserve in South

117 F—31

Dakota pine trees and wood, which it manufactured into lumber and cord wood, and then converted to its own use; that at the time and place of the conversion the lumber and cord wood were worth $10,451.06, and prayed for damages in this amount and interest. The answer of the Homestake Company consisted of a general denial of the willful cutting and removal of the trees and wood and of the alleged value of the manufactured lumber and cord wood, and an averment that whatever timber or wood was taken by it from the Black Hills forest reserve was taken by permission and authority of the secretary of the interior. At the trial there was a stipulation that the value of the wood and timber taken in the tree was $1,757.75, while the evidence was that the manufactured lumber and cord wood were worth $10,451.06 when the defendant used them. Thereupon the court instructed the jury to return a verdict against the defendant for $1,757.75, and the judgment upon this verdict is assailed by the United States on the ground that the legal measure of the government's damages was the value of the manufactured lumber and cord wood, and not the value of the wood and timber in the trees.

James D. Elliott (William G. Porter, on the brief), for the United States.

G. C. Moody and Chambers Kellar (James C. Moody, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The measure of damages for the reckless, willful, or intentional taking of ore, or timber from the land of another without right is the enhanced value of the ore or timber when it is finally converted to the use of the trespasser. But the limit of the liability for damages of one who takes ore or timber from the land of another without right through inadvertence or mistake, or in the honest belief that he is acting within his legal rights, is the value of the ore in the mine or the value of the timber in the trees. Bolles Wooden-Ware Co. v. U. S., 106 U. S. 432, 434, 27 L. Ed. 230; Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762; Durant Min. Co. v. Percy Consol. Min. Co., 35 C. C. A. 252, 254, 93 Fed. 166, 168; Gentry v. U. S., 101 Fed. 51, 54, 41 C. C. A. 185, 188. The court below instructed the jury to apply to this case the measure for the damages resulting from an innocent trespass. Counsel for the government assail this ruling on the ground that the court should either have instructed the jury to apply the measure of the damages for a willful trespass or should have left to the jury the question whether the trespass was willful or innocent. There are many specifications of error, but the only actual question which this case presents is whether or not a verdict of a jury that in the taking of this wood and timber the defendant was a willful trespasser could have been lawfully sustained under the undisputed facts which the record presents. These are the facts: The Homestake Mining Company has been engaged in mining upon a large scale in the Black Hills of South Dakota for many years. It is necessary for it to use large quantities of wood and lumber to carry on its work in its mines. Prior to 1898 it had obtained this wood

and timber from the public mineral lands of the United States under the provisions granting such corporations permission to do so found in the act of congress of June 3, 1878 (20 Stat. 88, c. 150). By the act of congress of March 3, 1891, the president had been authorized to set apart by proclamation public lands as forest reserves (26 Stat. 1091, 1093). Pursuant to this act, President Cleveland had set apart as a forest reserve certain tracts of land in the Black Hills of South Dakota in the vicinity of the mines of the defendant by a proclamation dated February 22, 1897 (29 Stat. 902). The effect of this proclamation had been suspended by the act of congress of June 4, 1897, until March 1, 1898 (30 Stat. 34), and that act had provided that the secretary of the interior might make rules and regulations for the sale for use in the states where they were situated, but not for export, of so much of the dead, matured, or large growth of trees upon forest reserves as might be compatible with the utilization of the forests; and that the secretary might permit, under regulations to be prescribed by him, the use within any state where any reservation was situated of timber and stone found upon such reservation free of charge by bona fide settlers, miners, and residents for their wood, fencing, building, mining, and other purposes (30 Stat. 35). The Homestake Company was actively engaged in operating its mines, and was employing many hundred men. It could not carry on its work without timber. The public mineral lands from which it expected to obtain this timber were about to be included within the Black Hills forest reserve, and, while rules for the purchase of land within those reserves had been promulgated on June 30, 1897 (24 Land Dec. Dep. Int. 589), these rules and regulations were inapplicable to the lands which were not yet included within the reserves, and it was certain that some time would be required to perfect the official machinery so that timber could be purchased under these rules from the lands about to be placed within the reserves. In this condition of affairs the attorney and the manager of the Homestake Company in South Dakota went to the city of Washington, and presented this state of the law and of the facts to the secretary of the interior and to the commissioner of the general land office in the month of January, 1898. The secretary of the interior said to the attorney for the defendant that his company might continue to cut and remove the timber on the forest reserve for its use in the operation of its mines after the suspension of the effect of the proclamation of the president ceased in the same way that it had cut and removed timber from the public mineral lands under the act of June 3, 1878, and the rules and regulations thereunder, until rules and regulations for the sale of the timber on the Black Hills forest reserve under the act of February 22, 1897, should be adopted or made applicable to that reserve, and the price of timber thereon should be fixed; that the company might keep an accurate account of the wood and timber it should take, and that when, under the rules of the department, the price of like timber taken from the Black Hills forest reserve was fixed, the company should pay to the government for the wood and timber it took meanwhile at the same rate which that price fixed. The attorney for the defendant accepted these terms,

instructed his client to comply with them, and advised the defendant that it had the right to cut wood and timber on the Black Hills forest reserve pursuant to this agreement until the rules for the purchase of timber thereon should be promulgated and made applicable thereto, and the price of wood and timber thereunder should be fixed. The superintendent and manager of the defendant in South Dakota testified that the attorney for the company advised him that the defendant had the right to cut and take timber on this reserve under the agreement of January, 1898, with the secretary; that he caused the employés of the defendant to take the wood and timber in controversy in perfect good faith, under the advice of the counsel of the company, without any idea whatever that this taking was a trespass, or an unlawful cutting; and caused an accurate account to be kept of the wood and timber that was taken. The attorney for the company testified that he gave his advice in good faith; that he believed that the secretary had full authority to make rules and regulations for the sale of the timber; that he could make such rules for the whole public, or for one corporation, or for one man; and that he believed that the company had the right to cut and remove the wood and timber in controversy under his agreement with the secretary. This wood and timber was not cut and removed for export or sale, but was used by the defendant in operating its mines, under this arrangement of January, 1898. In the month of August, 1898, revised rules and regulations for the sale of timber on the forest reserves were adopted by the secretary of the interior. Between August, 1898, and May, 1899, this wood and timber was cut and removed. The amount of the judgment is its value at the price since fixed by the department for the sale of like wood and timber taken from adjoining lands on the Black Hills forest reserve. This price was fixed in this way: In April, 1898, the Homestake Company sent to the secretary of the interior an application to purchase wood and timber upon the Black Hills forest reserve. This application did not cover the wood and timber here in controversy. A bid of $15,000 made by the Homestake Company on October 20, 1899, under its application of April, 1898, was finally accepted by the government in November, 1899, and paid by the company, and it is at the price fixed by that bid that this judgment requires the defendant to pay for the wood and timber which it took under the agreement with the secretary of January, 1898. The land from which this wood and timber was taken was not within the Black Hills forest reserve on April 8, 1898, when the application to purchase was made, but it was subsequently included therein by an amendment of the order of reservation made in the latter part of September in that year. In October, 1900, the defendant made a written proposition to the government to pay for the wood and timber here in controversy at the same price which it had paid for the wood and timber it purchased with the $15,000. This proposition set forth the facts which have been detailed in this opinion, and is verified by the superintendent of the mining company. This concludes the statement of the facts which condition the determination of this case, all of which are practically undisputed.

Now, the question is whether any reasonable man who reads these

facts without bias or prejudice, and who · exercises a fair and impartial judgment upon them, can fail to reach the conclusion that the defendant took and used the wood and timber for which this judgment has been rendered in the honest belief that it was lawfully exercising a right which it had acquired to purchase this property under the verbal agreement with the secretary of January, 1898. Counsel for the government do not dispute any of the facts which have been recited, but their chief contention is that the secretary of the interior had no power to make the verbal agreement of January, 1898; that the United States cannot be estopped from recovering the full value of the manufactured lumber and wood, or in any way affected by the misfeasance, negligence, or laches of its officers; that the application for the purchase of this timber and the application for the purchase of the other timber, which was bought for $15,000 by the defendant from the Black Hills forest reserve, were not made in accordance with the established rules of the interior department for the purchase of such property; that the defendant knew all this, because it was charged with knowledge of the law; and that it was, therefore, a willful and intentional trespasser. It is unnecessary to a determination of this case to discuss or decide the questions which the propositions which form the premises for this conclusion present, and for the purposes of this discussion the soundness of those propositions will be conceded, but not decided. The conclusion, however, which counsel deduce does not necessarily follow from their premises. Concede that the attempted sale of this timber to the defendant by the secretary in January, 1898, was not only unauthorized, but in violation of the acts of congress and of the rules promulgated thereunder, and that the presumption is that every man knows the law. This presumption prevails everywhere, and, like the similar presumption that every man intends the natural and ordinary effect of his acts, applies to every trespasser. If either or both of these presumptions make every trespasser a willful and intentional wrongdoer, because he is chargeable with knowledge of the law, then there never has been, and never can be, a trespasser through inadvertence or mistake, or one who violates the law in the honest belief that he is acting within his legal rights; and the rule that the damages caused by such a trespasser shall be limited to the value of the wood or timber in the trees or of the ore in its bed, which was announced in Bolles Wooden-Ware Co. v. U. S., 106 U. S. 433, 434, 27 L. Ed. 230, and which has been reiterated and applied in numerous cases since, is functus officio, and useless, because no class or party to which it is applicable can ever be. The truth is, however, that this rule, and every other rule which measures the damages caused by trespassers, does not call the righteous, but sinners, to restitution. None of these rules have any application to those who do not violate the law. Every trespasser breaks the law, and to every trespasser the maxim applies that every man knows the law. Notwithstanding all this, the law, in its wisdom, perceives the marked difference in the heinousness of the offenses of those who recklessly, or with actual intention to rob others of their rights, trespass upon their property, and of those who trespass by mistake, and with no evil purpose,

no actual, willful intent to commit a wrong; and it declares that the former class shall pay to their victims the full value of the lumber or the ore they take at the time they sell or use it, while the latter class shall be relieved from liability upon restitution of the value of the timber in the trees or of the value of the ore in the mine. The maxim that every man knows the law applies to all the members of both classes alike. It neither differentiates the classes nor their members, and it has no more relevancy to the real question which cases of this character present than the proposition that three and three are six. That question is always based on the conceded propositions that the defendant has violated the law and that every man knows the law. The question, then, is, did the trespasser violate the law, which he constructively knew, recklessly, or with an actual intent to do so, and to take an unconscientious advantage of his victim, or did he violate it inadvertently, unintentionally, or in the honest belief that he was exercising his own right? If the former, he was a willful trespasser, and the value of the manufactured timber or the extracted ore measures his liability. If the latter, he was an innocent trespasser, and the value of the wood in the tree or of the ore in the mine is the limit of his indebtedness. The test to determine whether one was a willful or an innocent trespasser is not his violation of the law in the light of the maxim that every man knows the law, but his honest belief, and his actual intention at the time he committed the trespass; and neither a justification of the acts nor any other complete defense to them is essential to the proof that he who committed them was not a willful trespasser. Durant Min. Co. v. Percy Consol. Min. Co., 93 Fed. 166, 168, 169, 35 C. C. A. 252, 254; Gentry v. U. S., 101 Fed. 51, 54, 41 C. C. A. 185, 188; U. S. v. Van Winkle, 51 C. C. A. 533, 113 Fed. 903, 905.

It is conceded that the taking of the timber from the land of the United States raised the presumption of fact that it was willfully and intentionally taken. But this is only a disputable presumption of fact, which the evidence may so completely overcome that it becomes the duty of the court to instruct the jury that it cannot prevail. Lawson, Presump. Ev., p. 661; Railway Co. v. Bryant, 13 C. C. A. 249, 256, 65 Fed. 969, 975, 976; Smith v. Railroad Co., 3 N. D. 17, 22, 53 N. W. 173; Spaulding v. Railway Co., 30 Wis. 110, 123, 11 Am. Rep. 550; Id., 33 Wis. 582; Huber v. Railway Co., 6 Dak. 392, 43 N. W. 819; Koontz v. Navigation Co. (Or.) 23 Pac. 820; Railroad Co. v. Talbot, 78 Ky. 621; Railroad Co. v. Packwood (Miss.) 7 Am. & Eng. R. Cas. 584; Railroad Co. v. Reese, 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66; Karsen v. Railway Co., 29 Minn. 14, 15, 11 N. W. 122. In the jurisdiction in which this action was tried "good faith consists in an honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Comp. Laws Dak. 1887, § 4739; Thompson v. Bank, 150 U. S. 231, 240, 14 Sup. Ct. 94, 37 L. Ed. 1063. Where is the evidence of any attempt on the part of this defendant to obtain any unconscientious advantage of the United States by the taking and use of this timber?

There was no attempt to take it secretly, furtively, or forcibly. Willful trespassers rarely go to their victims, ask their permission to take their property, agree to pay for it, notify them that they intend to take it under their assumed permission, and then openly proceed for months to carry out their supposed agreement. The mere fact that the attorney of this corporation notified the secretary of the interior that it was necessary to the prosecution of the business of his client that it should take timber from the forest reserve, and that he sought to buy and pay for it in behalf of the defendant, is very persuasive evidence of an honest purpose and a right intent. If the defendant sought an unconscientious advantage, why did it give notice beforehand of its intention to cut and remove this timber to a nation able to prohibit in advance or to stop it at any time?

Where is the evidence that this defendant believed that it had no right to take this timber when it removed it, or that it had any actual intention to obtain an unconscientious advantage of the government when it committed the trespass? It is said that this timber was cut and removed long after the temporary agreement with the secretary had expired, that this arrangement was to continue only until the rules were promulgated so that the price of the timber could be fixed, that the revised rules were announced in August, 1898, that this trespass did not commence until September, 1898, that it continued for six months, that no attempt was made to fix the price by any application to purchase this timber under the rules which the secretary had promulgated, and that these facts constitute substantial evidence of bad faith and of a willful trespass. But in January, and again in April, 1898, this defendant applied to purchase wood and timber upon the lands which now constitute the Black Hills forest reserve. The application which it made in April, 1898, seems to have remained pending until November, 1899, when for the first time the defendant succeeded in getting a price fixed for wood and timber upon this reserve. Thereupon it paid to the government $15,000 for wood and timber upon land contiguous to that from which this was removed, and offered to pay at the same rate for that which is now in controversy. The facts upon which the government relies to prove the bad faith and evil intent of the defendant lose all their persuasiveness in that direction when the further facts to which we have adverted are considered. It could have served no good purpose for the defendant to have filed other applications to purchase other timber when it was unable to get any price fixed by means of the application which it had already made. When this trespass was committed counsel for the defendant had applied to the secretary of the interior, who had power to make rules and regulations for the sale of and authority to sell this wood and timber, for permission to cut, remove, and pay for it. He had obtained that permission. It is conceded that the secretary had no power to grant this license, and that his action and that of counsel for the defendant were in violation of the acts of congress and of the rules of the department. But counsel for the defendant believed, and he advised his client, that this action of the secretary gave it the right to cut and use this wood and timber. The superintendent of the company believed, accepted, and acted on

this advice of its counsel, caused the defendant to cut and use the timber, as he says, "in perfect good faith, without any idea whatever of its being a trespass or an unlawful cutting." The counsel of the defendant was reputable and eminent. The error in his advice, if there was one, was not so plain that a layman could be fairly charged with knowledge of its existence, and the fact that the defendant committed this trespass under the advice of reputable counsel that it was acting within its legal rights goes far to establish its good faith, and to disprove the claim of the government that it ever intended or was attempting to secure an unconscientious advantage by cutting and using the timber. One who acts in good faith upon the erroneous advice of reputable counsel upon questions of legal right concerning which a layman could hardly have actual knowledge, is not chargeable with bad faith, or with a willful intent to commit a wrongful act because his counsel was mistaken in his view of the law. Selden v. Cashman, 20 Cal. 57, 81 Am. Dec. 93; Abbott v. Water Co. (Cal.) 37 Pac. 527.

The state of the law and of the facts when the verbal agreement of January, 1898, was made between the secretary of the interior and the counsel for the defendant, the fact that the defendant had for years been taking timber from the public lands under the rules promulgated by the secretary, the unsettled condition of the Black Hills forest reserve, the publicity which the defendant gave to its intention to take timber from it months before this timber was cut, and the undisputed facts that counsel for the defendant believed and advised his client that it had the right to take this property, and that the client believed and acted on this advice without any idea that its taking constituted any trespass or unlawful cutting, leave no room for the argument that any reasonable man could fairly draw from the facts in this record the conclusion that this was a willful trespass, and no doubt that the charge of the court that the government was limited to a recovery of the value of the wood and timber in the trees was right.

The other questions raised by this record relate to the admission of evidence, and are of a minor character. All the evidence which the defendant offered was received over the objections of the plaintiff that it did not justify the trespass because the agreement with the secretary was unauthorized, and violative of the law, and that the fact that the defendant had taken the wood and timber in good faith in the honest belief that it had the right to do so was not pleaded in the answer. A justification of the taking of the timber or ore is requisite to a complete defense of the act. But, as we have seen, it is not essential to that good faith and innocence of intentional wrong which will limit the damages to the value of the property taken in its original place, so that the objection that the evidence did not disclose a legal right in the defendant to take the timber was properly overruled.

The objection to the evidence of innocence and good faith that they were not pleaded by the defendant raises an interesting question. But there are two reasons why this judgment ought not to be reversed because that objection was overruled. In the first place, proof

of every fact essential to establish the good faith of the defendant and its honest belief that it had the legal right to take and use this wood and timber was made without objection while the government was introducing its evidence in chief, and this proof stands uncontradicted. In proving its case the United States offered in evidence that part of the affidavit of the superintendent of the defendant which stated the amount and character of the timber cut. The defendant at the same time offered the remainder of this affidavit, and it was admitted in evidence without objection. The affidavit set forth the agreement with the secretary of January, 1898, the advice of counsel for the defendant, the cutting and use of the wood and timber under that advice, the belief of the defendant that it had the right to take and use this timber under the agreement of January, 1898, and every fact material to establish the innocence and good faith of the company. An insuperable objection might have been made to the introduction of this affidavit on the ground that no opportunity had been given to the plaintiff to cross-examine the person who verified it, and on the ground that his testimony had not been so taken and returned as to make it competent evidence. But no such objection was interposed, and the affidavit thus admitted in evidence without objection became uncontradicted evidence of the facts which it detailed. Forms and rules are prescribed by statutes, courts, and decisions for the taking and production of testimony which give to the opposing party the right and the opportunity of cross-examination and the security of an oath. But this right, this opportunity, and this security may be waived by stipulation for, consent to, or silent acquiescence in the introduction of testimony; and when this is done the statement or affidavit admitted becomes as competent evidence of the facts it details as though every formality had been complied with. Walton v. Railway Co., 12 U. S. App. 511, 513, 6 C. C. A. 223, 225, 56 Fed. 1006, 1008; National Loan & Investment Co. v. Rockland Co., 94 Fed. 335, 337, 36 C. C. A. 370, 372. The plaintiff had alleged in its complaint that the defendant had "willfully, knowingly, and without any permit or authority from the secretary of the interior, and without any authority or permit whatsoever or at all," cut the timber and converted the lumber. Proof of a willful trespass was essential to its recovery of the value of the manufactured lumber and wood, even in the absence of an answer, for this was an action of tort for unliquidated damages. When the government rested its case, the legal presumption of a willful trespass which might have arisen from the unexplained cutting and removal of the timber by the defendant was completely overcome by the uncontradicted statements of the affidavit of the superintendent of the defendant, and the damages which the government was entitled to receive were as conclusively limited to the value of the wood and timber in the trees as they were at the conclusion of the trial. In other words, the proof of the fact that the trespass was not willful, that it was not committed with an intention to do a wrong or to take an unconscientious advantage of the government, but that the defendant took and used the timber in operating its mines in the honest belief that it had a legal right to do so under its agreement with the secretary,

was plenary when the government rested its case, and before the defendant offered any of the testimony to the introduction of which exceptions have been taken. It necessarily follows that, even if the testimony which was received over objections was erroneously admitted because the answer failed to plead the good faith of the defendant, the plaintiff was not prejudiced by its reception, and this judgment should not be reversed on account of its introduction because the court would have been compelled to have directed the same verdict and judgment in the absence of this testimony, and error without prejudice is no ground for reversal.

In the second place, inasmuch as in actions for unliquidated damages for torts the plaintiff is required to prove his damages in the absence of any answer or denial, and the defendant generally has the right to cross-examine the plaintiff's witnesses, and to introduce evidence to mitigate or reduce the damages claimed (10 Enc. Pl. & Prac. p. 1156; Parker v. Smith, 64 N. C. 291, 292; Bridges v. Stephenson, 10 Ill. App. 369, 371; Railroad Co. v. Holbrook, 72 Ill. 419, 422; Briggs v. Sneghan, 45 Ind. 14, 24; Lane v. Gilbert, 9 How. Prac. 150, 152), the interposition of an answer which contains a general denial or a justification does not deprive the defendant of this right. A defendant in an action to recover unliquidated damages for a tort may generally introduce evidence in mitigation of damages, except in actions for slander or libel, under a general denial in his answer; and there was no error in the admission of the defendant's evidence of innocence and good faith to mitigate the damages claimed by the government under the general denial and the justification pleaded in the answer of this defendant. U. S. v. Van Winkle, 51 C. C. A. 533, 113 Fed. 903, 905; Booth v. Powers, 56 N. Y. 22, 33; Harter v. Crill, 33 Barb. 283, 285; Thompson v. Halbert (N. Y.) 16 N. E. 675; Gentry v. U. S., 101 Fed. 51, 54, 41 C. C. A. 185, 188.

Numerous errors are assigned to the rulings of the court admitting various items of the defendant's evidence, such as the application to purchase the timber. But these alleged errors are not separately argued, and have lost all their materiality in view of the conclusions which have already been reached. Moreover, the only objection to these various items of evidence which has not been already considered is that they did not tend to show the good faith of the defendant, and that objection is not tenable. Where the good faith or the intent of a party in a given transaction is open to investigation, considerable latitude should be permitted in the introduction of evidence of the acts and sayings of the person whose intent is in question relative to the transaction in issue. The application of the defendant to purchase other wood and timber upon land in this reservation contiguous to that from which this was taken and the other items of evidence to which objection has been made all tended to establish the purpose and intent of the defendant in pursuing the course of action which it adopted and in taking the wood and timber here in controversy. There was no material error in the rulings of the court in the admission of this evidence; and, if there had been, it would not have been prejudicial to the government, because the fact that the

trespass was not willful was conclusively established without this evidence.

There is no substantial ground upon which this judgment can be reversed, and it is affirmed.