**SHELL OIL CO., Inc., v. MANLEY OIL CORPORATION et al.**

No. 393.

District Court, E. D. Illinois.

June 20, 1942.

John C. Quilty, of New York City, and Craig & Craig, of Mattoon, Ill., for plaintiff.

Layman & Johnson, of Benton, Ill., for defendants.

WHAM, District Judge.

This cause was first before the court upon plaintiff's complaint claiming to own the oil and gas rights in the two-acre tract in question with application for injunction to prevent defendants from drilling an oil well which it had started upon said tract and from producing oil therefrom. Trial upon the merits resulted in a decree of this court denying plaintiff's right to an injunction and dismissing its complaint on the theory that the defendant J. C. Shoemate, from whom defendant Manley Oil Corporation held an oil and gas lease, was the owner of the oil and gas rights under said tract. Shell Oil Co. v. Manley Oil Corp., et al., D. C., 37 F.Supp. 289. Plaintiff appealed and the case was reversed. The plaintiff was held to own said oil and gas rights and to be entitled to an injunction. 7 Cir., 124 F.2d 714. The mandate of the Circuit Court of Appeals was filed in this court on February 12, 1942. A decree of this court was entered pursuant to the mandate and on February 21, 1942, plaintiff, by leave of court, filed its supplemental complaint against defendants for an accounting for oil taken and sold and for other relief, including the right to have and to operate the oil well which, pending the appeal, defendants had completed, equipped and operated, producing and selling therefrom substantial quantities of oil. To this supplemental complaint all of the defendants filed answers resisting the relief sought and defendants J. C. Shoemate, the surface owner, and Florence Shoemate, his wife, filed their counterclaim asserting that the tract is their homestead, that it has a value of less than $1,000, that the use of the tract by plaintiff for producing oil will constitute a nuisance, disturbing them and interfering with their homestead rights. They pray for the protection of the court against plaintiffs by injunction and for other relief. Trial was had and the case is now before the court upon said supplemental pleadings, the evidence, oral and written, and the written briefs and arguments of counsel.

The facts developed at the trial, in addition to those contained in the record made in the main suit and certain pertinent facts developed in the main suit, were briefly as follows: Before the Manley Oil Corporation began to drill the well in question it was given actual notice by plaintiff of plaintiff's title to the oil rights and its intention to assert and protect same. Disregarding said notice, the Manley Oil Corporation started to drill a well on said tract. After the suit was filed and before the trial said defendants ceased drilling operations until a decree favorable to defendants and denying plaintiff's right to an injunction had been obtained. Thereupon, it resumed drilling and completed the well, though aware that the plaintiff had filed its notice of appeal and was perfecting its appeal of the case. On April 11, 1941, the Manley Oil Corporation, L. B. Manley being the owner of ninety-eight per cent of the stock, transferred the lease to L. B. Manley. The defendants, Manley Oil Corporation and L. B. Manley, equipped the well for operation and began the recovery and sale of the oil. They sold the oil for cash and have accounted for none

of it to the plaintiff but paid Shoemate on basis of one-eighth. After April 11, 1941, L. B. Manley alone operated the well and sold the oil. After July 1, 1941, he paid three per cent of the sale price of the oil to the State of Illinois. He continued to produce and sell the oil until December 3, 1941. After December 3, 1941, he continued to operate the well until February 12, 1942, but sold the oil to the Central Pipe Line Company by whom the proceeds have been impounded. The amount and value of the oil received by the Central Pipe Line Company is not disclosed by the evidence.

The two acre tract in question was part of a forty acre tract upon all of which the plaintiff had an oil and gas lease. At the time the controversy began this forty acre tract, including the two acres, was being developed by the plaintiff on a plan of one well to ten acres. The lease immediately adjacent to the two acre tract owned by one Adkins was likewise being developed on the plan of one well to ten acres. At the time the well was drilled it was uncertain to what extent, if any, the two acre tract was being drained by the nearest wells which had been put down on said leases of plaintiff and Adkins in accordance with above mentioned plan. The well drilled by defendants was located on the two acres approximately twenty-four feet from the line between the said two leases. It was not necessary or useful to the proper recovery of the oil under plaintiff's lease, including the two acres. The well disarranged the aforesaid plan of one well to ten acres and compelled Adkins to drill an offset well on his lease which was likewise drilled approximately twenty-four feet from the line separating the leases. By reason of said offset well which has been operated continuously and is still being operated the plaintiff's lease has been drained since the well on the two acre tract has been shut down and cannot be protected from future drainage except by the operation of the well drilled by the defendants.

The Shoemates gave the Manley Oil Corporation the lease with release of homestead, by authority of which lease the well in controversy was drilled and they thereby consented to its being drilled and operated at its present location with full knowledge that its operation would interfere with their undisturbed use and possession of the tract as their homestead. By said lease the Shoemates received one-eighth of the oil as royalty. The surface of said two acre tract is the homestead of the Shoemates and was such for many years before oil and gas were known to exist thereunder and is of a value considerably less than $1,000. They have not consented to the operation of the well on said tract by the plaintiff and resist plaintiff's right to do so as being without warrant of law.

The amount charged in the book account of L. B. Manley against said lease as expended in the drilling, equipping and operation of the well, producing and marketing the oil and procuring the lease is $24,625.18. He has recovered and sold from said well 24,606.25 barrels of oil for which he has received approximately $28,-503.04. L. B. Manley testified that one-eighth was paid to J. C. Shoemate as royalty but the amount actually paid to him is not shown by the evidence. In disposing of the oil Manley sold most, if not all, of it approximately seven per cent below the market price, as posted in that area, but did obtain all he reasonably could under all the circumstances, including the dispute over the title to the oil. The oil for which the sale price was collected was disposed of through the American Pipe Line Company, a corporation, in which the defendant L. B. Manley owned fifty per cent of the stock. At the market price the oil would have brought approximately $31,-682.00.

The defendants Helmerich and Payne, Inc., a corporation, Ed Morton and F. M. Loper were independent contractors or employees, have no personal interest in this suit and converted none of the oil. Defendants J. C. and Florence Shoemate did not personally convert any of the oil.

Before drilling the well the defendants L. B. Manley and Manley Oil Corporation had advice of counsel to the effect that their title to the oil rights under the land was good and that the title claimed by plaintiff was bad which advice they relied and acted upon. They knew the title was in dispute. They knew, also, after the trial of the main suit, if not before, that the disputed title question was unsettled under the law of Illinois and could not be settled until after all appeals had been exhausted or until time for such appeals had expired without appeal having been perfected.

The defendants J. C. and Florence Shoemate threatened physical resistance when plaintiff's agents, under the decree of this

court entered pursuant to the mandate from the Circuit Court of Appeals, attempted to go upon said land to operate said well and plaintiff was thereby prevented from so doing. The Shoemates are elderly, uneducated people and have exhibited violent feeling in the case against the plaintiff.

The plaintiff seeks to recover the market value of the oil at the time it was severed from the soil and the right to retain and operate the well and all equipment installed in connection therewith, except the tanks which it says are not needed; also a writ of assistance directed to the United States Marshal commanding him to put plaintiff in possession of said well and equipment; also an order decreeing plaintiff to be the owner of the oil well and equipment and that plaintiff and its agents, successors and assigns shall, as long as its oil lease shall remain in force and effect, have the exclusive right to enter upon said premises for all the purposes of producing, saving and marketing oil and gas produced therefrom, and drilling, equipping, maintaining, operating and removing any oil wells and equipment therefrom now or hereafter to be installed; and for a permanent injunction.

Defendants contend that they are not and have not been trespassers on the surface of the land and as to their invasion of plaintiff's oil rights they are in the position of good faith trespassers and as such are entitled to offset the cost of drilling and equipping the well and the cost of producing and marketing the oil against the proceeds of the oil. United States v. Homestake Mining Co., 8 Cir., 117 F. 481. The defendants J. C. and Florence Shoemate contend that they are the absolute owners of the surface and plaintiff has no right, implied or otherwise, to enter upon the surface of said tract either to operate the well now on the property or to drill and operate thereon any other well hereafter without their conveyance to plaintiff of surface rights and without their release to plaintiff of their homestead rights in said tract. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332.

■ In some jurisdictions a different measure of damages is applied as between a reckless or wilful trespasser and an inadvertent or good faith trespasser. This rule is well stated by the late Judge Sanborn in the case of United States v. Homestake Mining Co., 8 Cir., 117 F. 481 at page 482:

"The measure of damages for the reckless, willful, or intentional taking of ore or timber from the land of another without right is the enhanced value of the ore or timber when it is finally converted to the use of the trespasser. But the limit of the liability for damages of one who takes ore or timber from the land of another without right through inadvertence or mistake, or in the honest belief that he is acting within his legal rights, is the value of the ore in the mine or the value of the timber in the trees. Bolles Wooden-Ware Co. v. United States, 106 U.S. 432, 434, 1 S.Ct. 398, 27 L.Ed. 230; Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U.S. 428, 12 S.Ct. 877, 36 L.Ed. 762; Durant Min. Co. v. Percy Consolidated Min. Co., 8 Cir., 93 F. 166, 168; Gentry v. United States, 8 Cir., 101 F. 51, 54." The rights of the parties are governed by the law of Illinois. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. The foregoing distinction between good faith and willful trespassers in assessing damages for conversion has apparently not been recognized in Illinois. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332; Zeigler v. Brenneman, 237 Ill. 15, 86 N.E. 597; Washington Ice Co. v. Shortall, 101 Ill. 46, 40 Am.Rep. 196; Thomas Pressed Brick Co. v. Herter, 60 Ill.App. 58, affirmed in 162 Ill. 46, 44 N.E. 380; McLean County Coal Co. v. Lenon, 91 Ill. 561, 33 Am.Rep. 64; Illinois & St. L. R. & Coal Co. v. Ogle, 82 Ill. 627, 25 Am.Rep. 342; Greer v. Carter Oil Co., 373 Ill. 168, 25 N.E.2d 805. In 7 A.L.R. 930 appears the following statement of the Illinois rule:

"In Illinois, the measure of damages in the case of a trespasser who wrongfully mines and removes mineral from the lands of another is held to be the value of the article converted at the time it becomes a chattel, or, if removed to the mouth of the pit, its value at such place less the cost of conveying it there. In no instance is the trespasser allowed credit for the expenses incurred and labor bestowed in mining or producing the product. This rule applies although the trespass may have been inadvertent, and the rule is the same in both trespass and trover, the only variation being when circumstances of aggravation are relied on in trespass, in which case punitive damages may be recovered."

■ But if the Illinois law were otherwise the defendants would not be entitled to

be dealt with as "good faith trespassers" since they drilled the well and made the expenditures thereon after they knew the title and the right to the oil was claimed by plaintiff under an allegedly superior title and knew that the final determination as to who had the right to take the oil must abide the decision of the higher courts on appeal. Under these circumstances defendants proceeded at their peril. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.Rep. 332; Greer v. Carter Oil Co., 373 Ill. 168, 25 N.E. 2d 805.

■ Under the foregoing authorities and the facts of this case, the plaintiff is entitled to recover from L. B. Manley and from the Manley Oil Corporation the value of the oil on the date it was delivered to the pipe line company without deducting anything for the cost of production, or the amount paid out as royalty, but with credit for the amount actually paid to the State of Illinois, as tax on the oil produced and sold after July 1, 1941, with interest at the rate of five per cent per annum from the date the oil was so delivered to the date of the trial.

■ Though ordinarily the value of the oil would be its actual market value I believe that in view of all the elements entering into this case it should be measured by the price the defendants were able to and did obtain for same, as shown by the evidence and found herein.

■ In view of plaintiff's title to the oil rights under the tract and the fact that the well must be operated in order to protect plaintiff's lease and the further fact that this situation was brought about by the wrongful acts of the defendants the plaintiff is entitled to the exclusive right to operate the well and recover and take the oil therefrom and in doing so to use, without cost or interference, all of the equipment of the well on said two acre tract both above and below the surface necessary or useful in the operation of the well for and during the life of the well.

As to the controversy between the plaintiff and the Shoemates I do not find it necessary to decide whether, under the law of Illinois, the plaintiff has the implied right by virtue of the ownership of the subsurface oil rights to enter upon the surface of the two acre tract without the consent of the surface owner, to explore for oil and if found to recover same, in view of the form and content of the deed by which the surface was conveyed by the last owner of the fee in the combined surface and oil rights. This issue was not before the Circuit Court of Appeals in this case and was not determined by that court. Any language used in the opinion of the court that lends itself to such interpretation is dictum.

There is no need shown by the evidence for further exploration for oil and gas upon the two-acre tract at this time and no necessity appears for a determination of plaintiff's right so to do. There is now no contention that any one other than the plaintiff has the right to use the surface of said tract for such exploration and recovery of oil.

■ The well now upon the premises having been placed there wrongfully by the authority and procurement of the Shoemates, they are estopped from asserting any homestead or surface rights they might otherwise have to prevent the plaintiff from operating said well in view of the necessity for the operation of the well in order to protect plaintiff's lease from drainage. Plaintiff has the lawful right to operate the well without the consent of J. C. or Florence Shoemate and each of them is without right to interfere in any way with the operation of said well or any act of the plaintiff or its agents on said premises reasonably necessary for the operation or servicing of the well and the recovery of oil therefrom and the disposal of same.

■ Plaintiff is entitled to a writ of assistance to place it in possession of said well and to the injunctive process of this court to protect it and its agents against interference with its operation and servicing of said well and the recovery and disposal of oil therefrom.

Counsel for plaintiff may prepare formal findings, conclusions and decree pursuant hereto and present same to me by mail, if agreed upon between counsel, or present them to me, upon notice, at Centralia on June 27, at 10 A. M.