REICKHOFF, RESPONDENT, *v.* CONSOLIDATED GAS CO., APPELLANT.

No. 8929

Submitted February 16, 1950. Decided April 11, 1950.

217 Pac. (2d) 1076

Mr. E. K. Cheadle, Helena, Messrs. Harris and Hoyt, Shelby, Mr. L. P. Donovan, Shelby, for appellant. Mr. Cheadle argued the case orally.

Mr. Cedor B. Aronow, Shelby, and Mr. E. J. McCabe, Great Falls, for respondent. Both argued orally.

MR. JUSTICE BOTTOMLY:

Action for an accounting for the natural gas produced and sold from a well drilled by the defendant, Consolidated Gas Company, a corporation, on lands on which the plaintiff E. O. Reickhoff, held a valid oil and gas lease, and to enjoin the defendant from taking gas therefrom or in any manner interfering with plaintiff's possession. Judgment was entered, ordering defendant to account, awarding plaintiff the amount found due and adjudging plaintiff's lease to be wholly terminated as of midnight, March 1, 1946.

From that part of the judgment ordering an accounting and awarding plaintiff a money judgment defendant has appealed, and from that portion of the judgment terminating his oil and gas lease on the property, plaintiff has cross appealed.

The pertinent facts are as follows: On September 2, 1937, Katherine L. Jones, owner of the fee to the southwest quarter of section 3 of the northwest quarter of section 10, in township 32

north, range 2 west, Toole county, Montana, executed to the plaintiff Reickhoff an oil and gas lease thereon. The lease was duly recorded and within the time therein specified, plaintiff commenced operations on the property.

March 4, 1942, Katherine L. Jones conveyed the fee in the described lands to the defendant gas company.

April 2, 1942, the gas company commenced an action against Reickhoff and others seeking to quiet title to the real estate and the oil, gas and other minerals therein or thereunder, alleging ownership thereof in the gas company and seeking to have the lease to Reickhoff declared null and void.

August 11, 1942, the quiet title action was tried to the court sitting without a jury.

August 13, 1942, Reickhoff was inducted into the United States Army.

August 14, 1942, decree was filed.

August 24, 1942, Consolidated Gas Company entered upon the lands, removed Reickhoff's oil drilling rig from location, set up its own rig and started drilling.

August 28, 1942, Reickhoff filed his affidavit and motion that the decree so given and entered against him be vacated under the provisions of the Soldiers' and Sailors' Civil Relief Act, 50 U. S. C. A. Appendix, sec. 501 et seq.

The decree awarded to the Consolidated Gas Company costs in the amount of $90.77.

September 7, 1942, Consolidated Gas Company procured the issuance of a writ of execution, which it placed in the hands of the sheriff requiring him to levy on the oil and gas drilling rig, equipment and tools of Reickhoff to make the amount of said costs of $90.77.

September 10, 1942, the defendant, Consolidated Gas Company, completed a gas well which produced gas in paying quantities.

September 16, 1942, the sheriff of Toole county, proceeding under the aforesaid execution, sold at sheriff's sale, as the prop-

erty of Reickhoff, his oil and gas drilling rig, equipment and tools, for the sum of $32, same being purchased at such sale by the defendant, Consolidated Gas Company, which company thereupon removed the same from the leased lands.

From the decree so entered against him in the quiet title action Reickhoff appealed to this court, same being No. 8401 herein and reported in Consolidated Gas Co. v. Reickhoff, 116 Mont. 1, 151 Pac. (2d) 588, 590.

There, concerning the lease agreement and contract executed by Katherine L. Jones and Reickhoff, this court said: "The contract is clear that the only contingency which would operate to ipso facto terminate the contract and obviate the necessity of notice would be the failure to commence the well within the term. Since there is no question but that the well was commenced in time, the only thing which can operate to terminate the contract would be a breach of the covenant to diligently perform. Before the question of diligence can be litigated, the plaintiff must, under the terms of the agreement, allege and prove that a notice of default was given and no sufficient effort to remedy the default was made. This was not done and we must therefore hold that the complaint fails to state facts to constitute a cause of action.

"The judgment is reversed with directions to dismiss in so far as the appealing defendant [Reickhoff] is concerned."

This court handed down the above decision on February 29, 1944, whereupon the respondent Gas Company petitioned for rehearing, which petition was denied October 2, 1944, at which date remittitur issued, and on October 19, 1944, formal judgment dismissing the action against E. O. Reickhoff was duly entered and filed in the district court.

That decision became the law of this case in all matters therein determined.

During all the time from August 26, 1942, when he started active service in the army of the United States, until his honorable discharge in the fall of 1945, E. O. Reickhoff, the plaintiff herein, was without the state of Montana, serving in the battles

and campaigns of North Africa, Naples-Foggia, Rome-Arno, Southern France-Rhineland and Central Europe.

Upon receiving said discharge he went to the state of Missouri to visit his mother and father. While there at the home of his parents he was served by the sheriff in the state of Missouri with a notice from Consolidated Gas Company in substance notifying him that under the terms of his oil and gas lease agreement with Katherine L. Jones of September 2, 1937, ''you have failed to prosecute the drilling of an oil and gas well on the premises to the first known oil and gas horizon with reasonable diligence or otherwise. Notice is further given that all of your rights under said oil and gas lease shall terminate thirty (30) days after the service of this notice upon you unless the default hereinabove specified is remedied within said period.''

Following the receipt by him on January 30, 1946, of the above notice, E. O. Reickhoff made written demand upon the defendant gas company for an accounting of all gas produced and sold from the above described lands, but the company refused to comply with such demand in any particular.

The plaintiff Reickhoff here contends: That the oil and gas lease of September 2, 1937, between him and Katherine L. Jones has been at all times and is now in full force and effect; that the defendant Consolidated Gas Company was a wilfull trespasser by entering upon said leased premises on August 24, 1942, and in drilling a gas well thereon and completing the same to production on September 10, 1942, and by continuing to produce gas and selling the same to the present time; that although the defendant removed plaintiff's drilling rig, tools and other property from the location, and from the leased premises, yet the defendant immediately started drilling at the same place and by drilling a gas well to production, the defendant has perfected and validated the plaintiff's lease and has fulfilled for plaintiff the requirement to drill a gas well to the first known gas or oil horizon and has produced gas in commercial quantities, and although a trespasser as to plaintiff, yet defendant kept and thereby fulfilled the lease requirements and thereby main-

tained the lease in full force and effect; that plaintiff is entitled to an accounting from the trespassing defendant for all gas so produced and sold from said leased lands and that defendant should be enjoined and restrained from taking, appropriating or selling natural gas upon or from the lands and from interfering with plaintiff's entry upon or possession of the lands and from interfering with plaintiff in the exercise of his rights in and upon said land in accordance with the terms of his written agreement.

The defendant gas company contends: That defendant has been the owner of the land covered by the lease from Katherine L. Jones to E. O. Reickhoff, dated September 2, 1937, since the 4th day of March 1942, and still is the owner of the fee thereof, is in possession and entitled to possession thereof; that defendant on or about September 2, 1942, and without plaintiff's consent, commenced a well upon the said property and drilled the same to completion and encountered gas therein in paying quantities and sold the same, and intends to continue to do so; that by a decree of the district court the plaintiff's lease has been declared null and void and of no force and effect whatever; that the cost of production and marketing of the gas exceeded the market value thereof; denies that the lease of plaintiff is in force or effect; contends that said lease has long since expired and become forfeited and terminated; contends that defendant on August 14, 1943, the date of the district court decree, was under contract to supply gas to the city of Shelby; that the supply of gas was becoming dangerously inadequate; that it was imperative that the defendant find and produce gas with which to supply the needs of Shelby; that by reason thereof, and as owner in possession of said property, and after the district court decree had declared plaintiff's lease null and void quieted defendant's title to the land; that defendant commenced drilling an oil and gas well upon the land and obtained gas therein in paying quantities and produced gas therefrom using same to supply the needs of Shelby; that defendant caused to be served upon plaintiff a notice notifying plaintiff that he had

failed to prosecute the drilling of an oil and gas well on the land to the first known oil or gas horizon with reasonable diligence or otherwise and that all plaintiff's rights under his lease would terminate thirty days after the service upon him of the notice unless within such thirty days default be remedied; that plaintiff failed within said time or at all to commence drilling a well or to carry on any other operations upon the land; that on account thereof in accordance with said notice the lease and all plaintiff's rights thereunder became forfeited and terminated thirty days after January 30, 1946; that plaintiff has no right, title or interest in the lease nor has he any right, title or interest in or to the oil and gas or other minerals heretofore or hereafter produced from the leased land; that plaintiff made written demand on defendant for an accounting, that the demand was refused and that plaintiff and cross-defendant should be forever restrained and debarred from setting up or in any manner asserting any right, title or interest in said property, or any part thereof.

On his direct examination at the trial defendant's witness, James W. Johnson, president of the Consolidated Gas Company, testified: ''Q. Mr. Johnson, it is alleged and admitted in the pleadings that at some period the Consolidated Gas Company drilled a well and completed it on the land involved in this lawsuit. Can you state the date of the drilling, that is, the date the drilling was commenced and the date the well was completed? A. I can.

''Q. Will you do so? A. The well was spudded on August 24, 1942, and completed on September 10, 1942.''

Thus did the defendant corporation enter into and upon the property and start drilling its well within six days after service on defendant's counsel of the notice of the entry of the judgment in the quiet title action, and long before a bill of exceptions could be prepared and settled or appeal perfected. However, defendant did take a timely appeal resulting in a reversal by this court of the district court's judgment.

Was such entry into and upon the leased lands by the gas

company and the drilling of the gas well thereon, a wilful trespass? That the company was a trespasser on the leased lands is beyond doubt. But the company says it was not a wilful trespasser for it entered under the district court's decree, assuming to annul the lease and to quiet title in it. However, it knew the law gave to Reickhoff the right of appeal and that on such appeal the decree might be either reversed, modified, affirmed, or the case be sent back for the taking of further evidence or a new trial. It knew Reickhoff had vigorously fought the suit and that he was likely to appeal from the judgment entered against him. In misjudging the law and Reickhoff the gas company acted at its peril. It assumed the attendant risk of drilling the well on the lands leased to Reickhoff and of having the trial court's judgment reversed on appeal, but it took the chance and *lost*.

It is ordinarily held that the court will not relieve from the prejudicial effects of a mistake of law induced by an erroneous decision of an inferior court. 3 Pomeroy's Equity Jurisprudence, 5th Ed., par. 850-a, p. 318; 19 Am. Jur., Equity, sec. 72, p. 87; 10 R. C. L., Equity, sec. 57, p. 314.

As was said in a case involving similar facts: "Entire good faith, it occurs. to us, would have dictated to them that the proper course would be to wait until the controversy had been finally determined before expending large sums of money in drilling upon the land." Pittsburgh & West Virginia Gas Co. v. Pentress Gas Co., 84 W. Va. 449, 100 S. E. 296, 297, 7 A. L. R. 901.

The district court in its conclusions of law in this accounting action stated: "That the defendant, Consolidated Gas Company, in drilling said natural gas well on said lands and producing and marketing the said natural gas was willful trespasser upon the rights of said plaintiff E. O. Reickhoff * * *" Being a "willful trespasser" the gas company must account to Reickhoff for the unjust emolument resulting to such company by nature of the trespass.

Again in Pittsburgh & West Virginia Gas Co. v. Pentress Gas

Co., supra, the court said: "Why should one be treated as acting in good faith when dealing with property as his own, when he knows all of the facts which constitute his claim, as well as the claim of his adversary, which facts, when properly construed, give him no title to the land? Such a holding would make every man a judge of the law in his own case, instead of being bound by the law as interpreted by those charged with that duty. We must therefore conclude that the defendants, when they drilled the wells on these lands, were willful trespassers, just as much so as though there had been no question but that the plaintiffs had the superior right. They could not decide the disputed question in their own favor, and then proceed with the hope that their acts would be characterized by this court as in good faith, even though their judgment upon the law of the case should not be approved."

The defendant gas company attempts to distinguish the above from the case at bar stating: "But the facts of that case differ from this in that at the time the defendant there entered the premises and drilled a well, an action was actually pending and had not been determined." Such attempted distinction is without a difference. It overlooks the fact that here too an action was actually pending and had not been determined. It also overlooks R. C. M. 1947, sec. 93-8706, which provides: "An action is deemed to be pending from the time of its commencement *until its final determination upon appeal,* or until the time for appeal has passed, unless the judgment is sooner satisfied." (Emphasis supplied.) McCormick v. Shields, 63 Mont. 9, 13, 205 Pac. 831; 1 C. J. S., Actions, sec. 142, p. 1421; Peterson v. City of Butte, 44 Mont. 129, 120 Pac. 231.

Defendant relies heavily, along with other cases, upon the holding in United States v. Homestake Mining Co., 8 Cir., 117 F. 481. There the court took into consideration the fact that a government official (Secretary of Interior) wrongfully granted permission to the mining company to cut and remove timber. However, the reasoning of the Supreme Court of the United States in Pine River Logging & Improvement Co. v. United

States, 186 U. S. 279, 22 S. Ct. 920, 926, 46 L. Ed. 1164, we think is the better reasoning, wherein the Court says: "We regard the rule laid down in the Woodenware Case [106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230], that an intentional trespasser, or a purchaser from him, shall have no credit for the labor he may have expended upon the property at the time of its conversion, as an eminently proper and wholesome one. It is, and has for many years been, notorious that under the various guises of Indian contracts, purchases of timber entries, or cutting timber for railway, *mining,* or agricultural purposes, the timber lands of the United States are being denuded of all their substantial value by logging concerns gradually gathering to themselves all the valuable timber of the country, which Congress intended to reserve for the benefit of homestead entrymen, or the purchasers of land in small parcels. If trespassers under these circumstances were permitted to escape by the payment of the mere stumpage value of the standing timber, there would be a strong inducement upon the part of these operators to avail themselves of every opportunity of seizing this timber, since they would incur no greater liability than the payment of a nominal sum. It is only by denying them a credit for their labor expended upon it that the government can obtain an adequate reparation for this constantly growing evil, and trespassers be made to suffer some punishment for their depredations. * * *

"The case was an aggravated one, the conduct of the companies wholly indefensible, and the right of the government to recover is entirely clear." (Emphasis supplied.)

No question of offset wells, for the preservation or protection of the landowner's oil or gas being drained from the land is here involved, nor is there present any question of tenants in common.

This is a suit in equity—a suit for an accounting and an interest in real estate and for injunctive relief. It must be decided upon its own peculiar facts and circumstances which clearly distinguish it from the numerous authorities cited and relied upon by the defendant company.

The gas company was rightfully adjudged a "wilful trespasser," from the time it entered upon the land in controversy and started drilling the gas well thereon to the present time, and has continued in possession and continued, and still continues, to produce and sell the gas therefrom contrary to the judgment of this court in Consolidated Gas Co. v. Reickhoff, 116 Mont. 1, 151 Pac. (2d) 588, and in defiance of Reickhoff's right, here and now, resists a further order of the district court requiring that it account to Reickhoff.

"No one can take advantage of his own wrong." R. C. M. 1947, sec. 49-109.

The facts, circumstances and the law amply warrant and sustain the judgment entered by the district court ordering the accounting. See Conn v. Rice, 5 Cir., 204 F. 181; Pine River Logging Co. v. U. S., supra; Shell Oil Co. v. Manley Oil Corp., D. C., 50 F. Supp. 21.

The district court held that Reickhoff's lease became wholly terminated and cancelled at midnight on the 1st day of March 1946.

While the gas company eventually acquired the fee to the land, yet it took such title subject to the exclusive right and interest of the lessee Reickhoff to drill and explore for gas and oil thereon. At the time of its entry (August 24, 1942) the action to determine the respective rights of the parties was then pending (R. C. M. 1947, sec. 93-8706). At the time of the completion of the well (September 10, 1942), the action was still pending and our nation was at war and the lessee Reickhoff was on active duty in the armed forces of the United States and was so continuously engaged until the fall of 1945. In the meantime this court in 1944 determined that the oil and gas lease held by Reickhoff was valid and in full force and effect. The terms of the lease required a well to be drilled to the first known oil or gas horizon unless oil or gas in commercial quantities should be encountered at a lesser depth. Reickhoff had commenced drilling upon the property before being taken into military service and the record shows that the gas company com-

pleted to production the gas well so started by Reickhoff and thus was the condition of the lease met and the required well drilled.

W. P. McCullough, superintendent of the Consolidated Gas Company, at the time it drilled the well on the land, appearing at the trial as a witness for the company, testified that at the time the gas company started drilling the well he first went upon the land and examined it and at that time he knew nothing "about any lease, or anything at all, or any trouble." He testified: "I went and examined it.

"Q. At that time when you were there, was a mast standing or had it been lowered? A. It was standing.

"Q. Was it standing in place? A. The first time.

"Q. And on the second time you were there, where was the mast? A. Well, they laid it down, and moved in another rig. They moved in another National machine to drill a well.

"Q. So that the equipment had been taken away from this location, and taken away from there? A. Just a small distance, they laid the mast down.

"Q. Naturally they laid it down on the ground, and dumped the rig back off the location? A. Yes, dumped another one on.

"Q. You have noticed this equipment out in the yard of the Consolidated Gas Company, to which it was removed? A. I had it hauled out there, and it was hauled in a corner of the yard and it is laying there yet, just like it was."

Did the well so drilled by the gas company validate Reickhoff's lease and inure to his benefit under all the facts shown by the record before us?

At the time of the drilling of the well Reickhoff had the exclusive right to drill it. The gas company was a wilful trespasser thereon at the time it entered upon the land and has continued to be a wilful trespasser at all times since. It wilfully removed Reickhoff's drilling rig and equipment from location. It caused the rig and equipment to be sold at sheriff's sale for the paltry sum of $32. It removed the rig and equipment to its yards

where a part thereof remained at the time of the accounting action. In the district court it resisted an accounting to Reickhoff of the gas produced and sold from his leased land and it is resisting such accounting here.

It has completely ignored this court's decision in cause No. 8401, Consolidated Gas Co. v. Reickhoff, 116 Mont. 1, 151 Pac. (2d) 588, and it has kept this property from Reickhoff all these years. Can it be said that such conduct during this long litigation evidences good faith on the part of the gas company? We think not. Does the company come into this court in this action with clean hands? We think not.

In the recent (1942) case of Shell Oil Co. v. Manley Oil Corp., supra, in an action for an accounting and for an injunction, where the facts were similar to those in the case at bar, the Court said [50 F. Supp. 23] "Before drilling the well the defendants L. B. Manley and Manley Oil Corporation had advice of counsel to the effect that their title to the oil rights under the land was good and that the title claimed by plaintiff was bad which advice they relied and acted upon. They knew the title was in dispute. They knew, also, after the trial of the main suit, if not before, that the disputed title question was unsettled under the law of Illinois and could not be settled until after all appeals had been exhausted or until time for such appeals had expired without appeal having been perfected."

The court after commenting on the Illinois law, continued, "But if the Illinois law were otherwise the defendants would not be entitled to be dealt with as 'good faith trespassers' since they drilled the well and made the expenditures thereon after they knew the title and the right to the oil was claimed by plaintiff under an allegedly superior title and knew that the final determination as to who had the right to take the oil must abide the decision of the higher courts on appeal. Under these circumstances defendants proceeded at their peril. * * * Greer v. Carter Oil Co., 373 Ill. 168, 25 N. E. (2d) 805.

"Under the foregoing authorities and the facts of this case the plaintiff is entitled to recover from L. B. Manley and from

the Manley Oil Corporation the value of the oil on the date it was delivered to the pipe line company without deducting anything for the cost of production, or the amount paid out as royalty * * *

"In view of plaintiff's title to the oil rights under the tract and the fact that the well must be operated in order to protect plaintiff's lease and the further fact that this situation was brought about by the wrongful acts of the defendants the plaintiff is entitled to the exclusive right to operate the well and recover and take the oil therefrom and in doing so to use, without cost or interference, all of the equipment of the well on said two acre tract both above and below the surface necessary or useful in the operation of the well for and during the life of the well. * * *

"There is no need shown by the evidence for further exploration for oil and gas upon the two-acre tract at this time and no necessity appears for a determination of plaintiff's right so to do. * * *

"Plaintiff is entitled to a writ of assistance to place it in possession of said well and to the injunctive process of this court to protect it and its agents against interference with its operation and servicing of said well and the recovery and disposal of oil therefrom." See Gillespie v. Fulton Oil & Gas Co., 239 Ill. 326, 88 N. E. 192.

Having acted as it did, the defendant gas company may not now be heard to complain in a court of equity of the unfortunate consequences to it. Equity looks at the whole situation and grants or withholds relief as good conscience dictates. 30 C. J. S., Equity, sec. 89, p. 456.

The need for gas to supply their customers is no excuse. One may not invade the property rights of another and attempt to justify or excuse such legal wrong because of need.

When an equity court takes jurisdiction of a controversy, its jurisdiction is full and complete, and it may render final judgment in relation to all matters involved and growing out of

that controversy. See Merchants Fire Assurance Corp. of New York v. Watson, 104 Mont. 1, 64 Pac. (2d) 617.

By the drilling of the gas well and producing gas therefrom ■ in commercial quantities, the gas company has done everything required of E. O. Reickhoff to validate his lease. The lessor cannot complain of its own folly in drilling the well when it had no right to do so, and during the term Reickhoff had the exclusive right. This vaulting ambition like MacBeth's overleaped itself. The serving of the notice on Reickhoff as of January 30, 1946, was of no avail, for the reason that the well he was required to have drilled on the lands had already been drilled by the defendant gas company. It had volunteered to perform his obligation and so long as the well drilled produces gas in commercial quantities the lease continues. Another well was not required under the terms of Reickhoff's lease. "The law neither does nor requires idle acts." R. C. M. 1947, sec. 49-124.

At the trial James W. Johnson, president of Consolidated Gas Company, testified:

"Q. So that when this notice was served you believed that under the terms of the oil and gas lease that diligent drilling, in accordance with good practice, good oil practice, required the drilling of another well upon this 320 acre tract in addition to the well already there? A. I did not.

"Q. Now, after this notice was given, did you ever drill an additional gas well upon this property? A. I did not.

"Q. The only well that has been drilled on this property is the well that was drilled by the Consolidated Gas Company in this case? A. The only well that has ever been drilled on this property to my knowledge, is the well that was drilled and paid for by the Consolidated Gas Company."

Thus did the gas company believe and treat the well drilled as adequate for production and conforming to sound gas producing practices.

Under the facts and circumstances of this case, in equity and good conscience we must and do hold that the well drilled by the

defendant Consolidated Gas Company, a corporation, inured to the benefit of E. O. Reickhoff and constituted a compliance with the requirements of the latter's oil and gas lease on the lands and kept such lease alive and in good standing.

Having reached these conclusions it is unnecessary to further explore the other specifications of error urged on this appeal. We have read the exhaustive briefs of defendant and the cases cited, but in no case cited are the facts at all similar to the facts in this case,. nor have we been able to find a case like this. We do not believe there is another such case where any one has attempted to take such an unconscionable and inequitable advantage of a man while he was in the military service of his country.

That portion of the decree ordering and adjudging an accounting is affirmed; that portion thereof voiding the Reickhoff lease is reversed and the cause is remanded to the district court with directions to enter decree for E. O. Reickhoff and against the defendant Consolidated Gas Company for the injunctive relief sought, including further accounting, in conformity with this opinion, with costs to the plaintiff E. O. Reickhoff and against the defendant Consolidated Gas Company. It is so ordered.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES FREEBOURN AND METCALF and THE HONORABLE JOHN B. McCLERNAN, District Judge (sitting in place of MR. JUSTICE ANGSTMAN, disqualified), concur.

Rehearing denied May 23, 1950.