KISHI v. HUMBLE OIL & REFINING CO.
(No. 1076.)

(Court of Civil Appeals of Texas. Beaumont.
April 16, 1924. Rehearing Denied
May 7, 1924.)

1. Mines and minerals ⬅78(1)—Right of entry. under lease terminated three years from date.

Under lease to explore for oil and gas for one year, which could be extended in absence of drilling operations for two years more by payment of stipulated rental, right of entry in absence of such operations *held* to end three years from date of lease.

2. Contracts ⬅146—Contract runs from date it bears.

A contract runs from date it bears, and not from date it is delivered.

3. Mines and minerals ⬅73—Date of original lease of oil and gas rights held not superseded by date in copy.

That original lease to explore for oil and gas was dated on day of execution, and copies were dated on day of delivery, *held* not to show an intention by parties to substitute date in copies for that of original lease.

4. Mines and minerals ⬅51(1)—Lessee's entry after expiration of lease held trespass.

Lessee's entry after expiration of his lease and assertion of exclusive right to possession and development of the land for oil and gas was a wrongful ouster of owner, and a trespass, entitling owner to recover such damages as he suffered.

5. Mines and minerals ⬅51(5)—Measure of damages for wrongful entry stated.

Where lessee's entry to explore for oil and gas after expiration of his lease constituted a trespass, owner was entitled as damages to market value of leasehold rights and privileges in the land owned by him.

6. Mines and minerals ⬅51(3)—Proof held not sufficient to warrant recovery of any specific sum as damages.

Where lessee's entry after expiration of lease to explore for oil and gas constituted a trespass, lessor was not entitled to any specific sum as damages without a showing that he had an opportunity to lease, and would have accepted it, or what he could and would have leased his interest in oil and mineral rights for at time of trespass.

Appeal from District Court, Orange County; A. D. Lipscomb, Special Judge.

Action by K. Kishi against the Humble Oil & Refining Company. Judgment for plaintiff for $1, and he appeals. Reversed and remanded.

Holland & Holland, of Orange, for appellant.

Jno. C. Townes, Jr., and G. P. Dougherty, both of Houston, and D. C. Bland, of Orange, for appellee.

O'QUINN, J. Appellant was plaintiff below. The following is taken from appellant's brief as to the nature of appellant's demand against appellee:

"This suit was filed by appellant as plaintiff on April 2, 1923, against appellee, to recover the rental value for oil purposes of a 50-acre tract of land in Orange county, and the petition of plaintiff sets out the cause of action substantially as follows:

"That on December 23, 1919, plaintiff owned a described tract of land containing 50 acres, a part of the Jas. Dyson league, in Orange county, and that one Isaac Lang owned an undivided one-fourth interest in the minerals on said premises, plaintiff owning title to the surface and the remaining three-fourths of the minerals, and that on that day he, together with the said Lang, leased said lands for oil purposes to the defendant company under a written lease, a copy of which was attached to the petition, and by the terms of which lease the same could be extended by additional payments and without operations to a date not beyond December 23, 1922.

"That said lease was kept alive by proper payments made by the defendant to December 23, 1922, being the latest date under its terms it would be so kept in force, and that during the existence of such lease the operations in the oil field in which the leased premises were located showed that said land was nonproductive in oil, and the defendant did not exploit same for that purpose during the life of said lease, but saw proper, as it had a right to do, to abandon said lease without operating for oil on the leased premises.

"That soon after the expiration of said lease oil was discovered in paying quantities in close proximity to the land described, thereby rendering this land valuable and in demand for oil purposes, and after the discovery of such oil the defendant negotiated with plaintiff for another lease on said premises, which negotiations were carried on in full recognition of the fact that the lease theretofore given had fully expired, and, the negotiations not resulting in any additional contract, and defendant being unable to negotiate on satisfactory terms with plaintiff for a lease on said premises, and said premises appearing to be of exceedingly great value at the time for oil purposes, the defendant unlawfully, and with force and arms, and without right, entered upon and took possession of the property, and asserted a claim thereto fictitious, and not valid, and erected derricks on said lands, and commenced the drilling of wells thereon and dispossessed plaintiff, and after notice from plaintiff refused to surrender to him the possession of said property, but continued to use and enjoy the same and convert to their own use and benefit the value of the use and rental of the land taken and being enjoyed, and deprived plaintiff of the value and use thereof, and rendered it impossible by such acts for plaintiff to derive any revenue from the rental of same for oil purposes, as was customary in said field and in all oil fields, and that said right so taken and enjoyed wrongfully by the defendant had a market value of $3,000 per acre, and but for the acts of defendant plaintiff could and would

have received for the right taken by the defendant the sum of $3,000 per acre, which could and would have been received as rental of said lands upon the same terms and conditions specified in the lease asserted by the defendant, and the plaintiff prayed for judgment for the damages sustained by him."

The defenses to plaintiff's cause of action are reflected by appellee's brief, as follows:

"I. The lease of December 23, 1919, was not executed and delivered to the Humble Oil & Refining Company as a completed instrument until after January 29, 1920, and, while it states that it is to run for three years from date, we contend that the word 'date' used in this lease, under the facts disclosed by the evidence, means the 'date' on which the lease was delivered to the defendant, Humble Oil & Refining Company, and went into operation as a valid contract, for the reason that the lease shows upon its face and by all of its terms that it was to run for the full term of three years, and the undisputed facts show that the Humble Oil & Refining Company, lessee in said lease, commenced drilling operations upon the 50-acre tract of land described in said lease on January 23, 1923, within three years after the lease was delivered, and within three years after it went into operation as a lease contract, if, in fact, it ever went into operation as a contract between the parties, which is not admitted, but is expressly denied.

"II. That there was an oil and gas lease executed and delivered on February 24, 1920, by K. Kishi and I. Lang to the Humble Oil & Refining Company, covering this identical tract of land, running for a term of three years, and that this last-mentioned lease contract was made as a substitute for and to take the place of the lease of December 23, 1919, and that in fact the consideration of $1,500 recited in the first lease of December 23, 1919, was not, in fact, paid until February 25, 1920, and that the same was, in fact, paid for the substitute lease bearing date of February 24, 1920, and not for the lease of December 23, 1919.

"III. That the minerals in the tract of 50 acres of land involved in this suit were owned and held by K. Kishi, of Orange county, and I. Lang, of Bexar county, as cotenants, the said K. Kishi owning three-fourths of the mineral estate in the property, and the said I. Lang owning one-fourth of the mineral estate, and that the defendant, Humble Oil & Refining Company, had and held at the time that it entered upon the 50-acre tract of land on January 23, 1923, and commenced drilling operations thereon, a valid oil and gas lease upon the interest of I. Lang in the minerals in said 50-acre tract of land, and entered upon said land as the lessee and with the knowledge and consent of the said I. Lang, and drilled said well with the knowledge and consent of the cotenant, the said I. Lang, holding and claiming the estate of the said I. Lang in the minerals in and under the said 50-acre tract of land, and the said K. Kishi had and held no cause of action for damages against his cotenant, I. Lang, or the Humble Oil & Refining Company, who entered upon said property as the lessee and representative of said I. Lang.

"IV. That the plaintiff did not prove or undertake to prove by the evidence offered that it actually had an opportunity to lease the property in controversy for $700 per acre, or for any other sum. There was no evidence of any kind offered that the claim of the Humble Oil & Refining Company that it held a valid oil and gas lease upon the property in fact deprived the plaintiff of an opportunity to lease the property. The proof offered merely went to show that the property could probably have been leased for $700 or $1,000 per acre, but the proof does not show, and no effort was made to show, that any one offered to lease the property from plaintiff, K. Kishi, and that the trade was turned down on account of the fact that the Humble Oil & Refining Company claimed to have a lease upon the property.

"V. That the cause of action for damages was too uncertain, speculative, and remote to permit a recovery in damages, and was not the natural and probable consequence of an act of trespass."

The case was tried before the court without a jury, and judgment rendered for plaintiff for nominal damages in the sum of $1, from which judgment he brings this appeal.

The court made and filed the following findings of fact and conclusions of law:

"The plaintiff, K. Kishi, of Orange, is the owner of all the surface and three-fourths undivided interest in the oil and mineral rights on 50 acres of land at the oil field in Orange county, adjoining a small tract on which a producing well about 150 feet distant was brought in on the 22d day of January, A. D. 1923. The bringing in of this well immediately rendered the 50-acre tract very desirable as a possibly productive territory. The remaining one-fourth interest in the oil and mineral rights belonged to Isaac Lang of San Antonio.

"The 50 acres had been covered by a lease from plaintiff, Kishi, and Isaac Lang to defendant, Humble Oil & Refining Company, which, together with certain payments duly made under its provisions, gave the lessee 3 years from its date in which to begin drilling. On the day following the bringing in of the well on the adjoining tract the Humble Oil & Refining Company moved on the 50 acres and began drilling a well, claiming that the 3 years from the date of the lease had not expired, and drilled a well which proved unproductive, and gave the land the character or repute of nonproductive land. The plaintiff asserts that the third year under the lease had expired; that the entry was wrongful, and by reason of such wrongful entry and detention of the land and operations showing it in the character of nonproductive land, or giving it that reputation, there was no longer any opportunity to sell or lease it as such, and that plaintiff, as owner of three-fourths interest in it, was damaged to the amount of three-fourths of the money value of a lease upon it, i. e., the value it had following the bringing in of the well on the adjoining tract and up to the time of the loss of value as oil land. The plaintiff sued to recover the value of such a lease contract as defendant claimed to have, and offered to surrender to defendant his three-fourths of the oil rights, such as were claimed by defendant at the time of its entry and during the detention of the land. Trial was before the court without a jury, and judgment rendered for

plaintiff for $1 and costs, and both sides have demanded findings of fact and conclusions of law.

### "Findings of Faet.

"(1) The lease under which the defendant claimed the right to enter and prospect for and develop oil production was negotiated for defendant in December, 1919, and was executed by Kishi and Lang as lessors' and defendant as lessee, bearing date December 23, 1919, in consideration of $1,500 in cash and a royalty on production therein provided for. It gave the defendant one year from its date in which to commence operations, with the option of renewing for 2 additional years on making payment of $1,500 each year. The two payments were made for extensions, thus giving the lease effect for the period of three years during which defendant might commence drilling. One of the parties to sign the lease of date December 23d was Isaac Lang, who is not a party to this suit, who signed and acknowledged it January 29, 1920. He put in some clauses which were acceptable to the other parties and immaterial here. These clauses were typewritten and pasted on. There seems to have been only the one copy. On returning it Isaac Lang required that a copy be made for his files. When it reached the office of defendant three or more copies were made, without any purpose to make a substantial change in the duration of the lease or otherwise, but simply to take the clauses into the document which, in the original, were pasted on, and further to afford the plaintiff and Lang copies. The defendant retained no copy of the second draft (except an unsigned carbon), and there seems to be no evidence that a third copy was signed, but the contrary appears from the evidence. It caused the original draft to be recorded in Orange county. The original, though dated December 23, 1919, was not acknowledged by Lang until January 29, 1920, and he, under advice of his counsel, has construed the instrument as allowing 3 years from that date to the defendant to commence operations, and therefore has consented to or acquiesced in the entry of defendant on January 23, 1923, to commence drilling.

"(2) In making up the second draft or copy in February, 1920, the date was written with the typewriter 'this ——— day of February 1920.' This was done without intent to make any substantial change of the original, which was executed and delivered bearing date December 23, 1919. In signing these copies one of the parties acknowledged the instrument on February 24th and gave it that date by filling in the blank space above indicated. Another had acknowledged it on February 18th, leaving the blank in the date line. The evidence that the change in the date in this draft of the instrument was not intended to vary the effect of the one dated December 23d and recorded is satisfying, and it is not necessary to recite the evidence pro and contra.

"(3) The defendant, having no claim of a right of entry after the expiration of 3 years from the date of the lease, but contending that same had not expired, entered upon the land on January 23, 1923, and continued in occupancy of it until May 10, 1923, at which time it removed its material and left the land unoccu-

pied. Defendant during that period drilled one well, setting the screen twice and finally abandoning the well as a dry one on April 28, 1923. The terms of the lease, if then still operative, required it to begin a second well within 60 days after completion or abandonment of the first.

"(4) Plaintiff in person knew of the entry and exploration, and did not attempt to interfere, but did not consent, and by February 14, 1923, had given defendant written notice of objection to the drilling then in progress. In conversation with a representative of the oil company at or about the time of the entry, he indicated that he was then not certain of the date of expiration, but he made it clear that he insisted upon his rights as fixed by the contract, whatever might be the effect of its provisions.

"(5) The only proof of damage or injury to the plaintiff was that, but for the interference of defendant with possession, and but for claims asserted by defendant and the cloud thus cast upon plaintiff's title, which rendered it wholly unmarketable, the plaintiff might have leased his three-fourths of the 50 acres for a large sum of money, as bonus or money price of the lease, besides retaining a royalty on the production; whereas since the entry upon the land by defendant and drilling of the dry well no sum whatever could be obtained for such a lease nor for the oil rights, if any, in the 50 acres of land. Aside from this there is no evidence that the land could have been put to any profitable use by any one during the period of detention.

"(6) There were witnesses for plaintiff who testified that a lease, such as defendant asserted on land situated like the 50-acre tract could have been made for a bonus of $2,500 per acre; others to the effect that $1,500 could have been obtained on the market; others testified that $1,000 and upward was the value and one of plaintiff's witnesses testified that $750 was the value of the north half, while he did not know whether the other half had any value as an oil lease or not. The defendant introduced no conflicting evidence as to value. The plaintiff asserts with much force in argument that the preponderance of the evidence shows a value of at least $1,500 per acre. It seems probable, in view of all the evidence, that purchasers could have been found disposed to speculate on the probability of oil being found in this tract, who would have paid during the period of uncertainty as to its productiveness at the rate of $1,000 per acre for the customary lease of the 50 acres, and that it had such an actual market value during that time, and it is so determined.

"(7) There is no doubt, apparently, but that the land in question has ceased to have any market value as a leasehold for oil development, and I so find.

"(8) There is no evidence that it has any value for any other purpose than an oil lease, or that the detention of it damaged the plaintiff unless his probable loss of bargains could be treated as a ground for recovery of damages, nor is there evidence that plaintiff had an actual specific opportunity to sell or purpose to sell, but for the interference of defendant.

"(9) The evidence shows that plaintiff's co-

tenant, Lang, consented to defendant's entry and prosecution of drilling operations, and treated the lease to defendant as being still in operation up to the 29th of January, as fixed by payments, and up to the abandonment of the lease as supposedly extended by operations begun prior to the 29th of January, 1923.

"(10) As Lang consented to the entry and construed the contract as authorizing it, and as Kishi himself, in conversation with defendant's agent prior to entry, was not positive in assertion of the contrary, I find there was no malicious conduct on defendant's part to require any other than the ordinary measure of damages to be applied.

### "Conclusions of Law.

"(1) The lease contract must be construed as confining the right of entry to the period ending 3 years after the date of the contract, which was December 23, 1919.

"(2) The negotiations were had in December, 1919, and the agreement then made, and the intention of the parties was, in legal effect, that the property should not be embarrassed with the lease (in the absence of drilling operations) for a longer period than 3 years from the date fixed in the contract as its date, notwithstanding the contrary interpretation placed upon it by Lang; and the fact that some of the duplicates prepared for him and Kishi were given a different date would not make so substantial an alteration in the rights of the parties, in view of the evidence that the new draft, if it was to serve any other purpose than to afford copies to Kishi and Lang, was at least not to make any substantial change in the rights of the parties.

"(3) The entry on the land by defendant and its detention after the discovery on an adjoining tract in January, 1923, was therefore wrongful, and the plaintiff is entitled to recover his damages and costs therefor, but only in accordance with the ordinary measure which implies compensation for the actual loss sustained, and not the equivalent of some profit he might have made if he had chosen to speculate on the possibility of unproductiveness, and to sell at rates which might have been obtained from those who, on the other hand, were willing, during the period of uncertainty as to productiveness of the land to speculate on the chances of an explorer obtaining production. While there are doubtless instances in which actually lost profits are recoverable as damages for the wrongful detention of property, yet it is not believed that possible profits so highly speculative, remote, and contingent could be allowed, as those which result from failure to sell property at a price out of all proportion to the actual value which subsequent developments show it to have, especially when it does not appear that plaintiff had lost an actual opportunity to sell at such prices, nor that he himself was ready, in advance of exploration, to accept the prices temporarily obtainable prior to exploration.

"(4) It is argued that to allow the exploiter to get off with nominal damages under such circumstances would be an invitation to him to make his explorations as a trespasser, and enable him to use his information thus obtained in bargaining with the owner and adjoining proprietors. But it seems a sufficient answer to say that ordinary prudence would deter any practical oil operator from risking the outlay for drilling wells on land where he was conscious of being only a trespasser, and therefore not entitled to enjoy the fruits of his investment. In the exceptional cases, or where the parties are in doubt as to their rights, such trespasses can always be prevented or remedied by proper process if the owner does not choose to enjoy the advantage of explorations made at the trespasser's expense. For the owner to take his chances of oil discovery by explorations of a trespasser, all of which would inure to the benefit of the owner if the exploration developed oil, and at the same time to hold in reserve the purpose to make such explorer pay, in case of failure, the value which speculators would have been willing to pay before the test for the chance of oil being discovered, would not be allowable under any theory of mere compensation. In such a case the owner has enjoyed his chance, and therefore could not recover for the value of such chance as a lost one. Viewed in the light of circumstances as they existed before completion of the test, nothing could have been shrewder on plaintiff's part than to guard himself carefully against estoppel, as was done, and await the result of exploration made at the expense of a trespasser.

"(5) All claim of the lessee was abandoned, under the terms of the lease, on the expiration of 60 days from the completion of the dry well without beginning a new one. If the test was an imperfect one, whatever possible value exists in the land is for the advantage of the owners. There are no terms of the contract under which defendant could be required to take it and continue explorations or production on it.

"(6) It is argued by defendant that since the entry was consented to by plaintiff's cotenant it was not a wrongful entry nor ouster. But this contention cannot be upheld under the circumstances of this case, because the entry was in repudiation of a right of plaintiff, and constituted a wrongful ouster of plaintiff and trespass on plaintiff's land for which the plaintiff is clearly entitled to recover nominal damages, here fixed at $1 and all costs of suit. To which findings and conclusions plaintiff excepts."

The court's findings of fact are very full, and, without further stating the facts, we adopt same as our findings, and as being fully supported by the record.

The first question necessary to be determined is: When did the right of entry under the lease given by Kishi and Lang to appellee expire? The lease was dated December 23, 1919, and contained the following clause:

"Lessee is hereby given the right to commence operations for the drilling of a well or sinking of a shaft upon the above-described property within 12 months from date, and the failure of the said lessee to begin such operations within such time shall cause a forfeiture of this lease: Provided, however, that forfeiture may be prevented and the time within which such operations may be begun may be extended for successive periods of 12 months each on the condition that said lessee shall, on or before the first day of each period, pay or tender to lessors the sum of fifteen hundred

($1,500.00) dollars; and provided further that the time within which such operations may be begun shall not be extended or delayed by payment of rental for a longer period than two (2) years from date of said first extension."

It is thus seen that the lease was for a period of one year, with the right, in the absence of drilling operations, to extend the life of the lease by paying a stipulated rental annually for two years, thus making and limiting the life of the lease, in the absence of drilling operations, to a period of not. more than three years. Appellee, contending that its right to enter upon the land had not expired, having paid the two annual rentals permitted by the lease contract, on January 23, 1923, entered upon the land and began the drilling of a well, and continued to assert and to hold the exclusive possession of the land described in the lease, and to drill a well, which proved to be nonproductive, up to and until April 28, 1923, when it abandoned the well and removed from the land. Appellant objected to appellee's entering upon the land, claiming that the right to do so had expired, and notified appellee in writing that he would hold it responsible for any and all damages that resulted from appellee's action, as well as for the full value of the leasehold rights of said land from the date of appellee's entry.

When did the right of entry under the lease expire? Appellant insists that it expired at the end of 3 years from the date of the lease, December 23, 1919, or on December 23, 1922, while appellee contends that the right to enter did not expire until 3 years from the date of the delivery of the lease executed, which was contended to be not earlier than January 29, 1920, that being the date on which Lang signed and acknowledged the lease. This would have carried the lease to January 29, 1923. The contract required appellee to begin the drilling of a well on the land "within twelve months from date," and that "the time in which such operations may be begun may be extended for successive periods of twelve months each on the condition that said lessee shall, on or before the first day of each period, pay * * * and provided further that the time within which such operations may be begun shall not be extended or delayed by payment of rental for a longer period than two (2) years from date of said first extension."

[1, 2] The court found as a matter of law that the lease contract must be construed as confining the right of entry to the period ending three years after the date of the contract, which was December 23, 1919. The law seems to be that the time a contract is to run should be computed from the date the contract bears, and not from the date the contract is delivered. 39 Cyc. 1326.

[3] Appellee's contention that two leases were executed by Kishi and Lang to appellee

on the same land, one dated December 23, 1919, and the other February 24, 1920, and that the latter was intended by the parties to supersede and take the place of the first, is overruled. The court, in his conclusions of law, supra, found against this contention, and for the reasons therein set out we adopt said finding.

[4] Appellant insists that, notwithstanding appellee had the consent of Lang, appellant's cotenant, to enter upon the land at the time it did, the lease contract having expired, appellee was a trespasser upon the premises, and liable for damages, as claimed by appellant. Appellee denies this, and asserts that the contract had not expired, for the reason that a new contract or lease was executed February 24, 1920, but as we have held against that contention, it was not necessary to discuss same further. However, appellee insists that, as it had the consent of appellant's cotenant, Lang, to enter the premises and drill for oil, it could not be considered a trespasser. This contention cannot be sustained under the facts. The lease having expired, appellee's entry was a repudiation of a right of appellant, and the evidence shows the entry to have been, and the appellee admits it was, exclusive in its nature, appellee asserting the exclusive right to possess and develop the land for oil and gas. It was therefore a wrongful ouster of appellant and a trespass upon his land, entitling him to recover such damages as he could show himself to have suffered.

[5, 6] Appellant contends that the court, having found that appellee's right of entry had expired, and that appellee was a trespasser on the premises of appellant, and that appellant was therefore entitled to damages, erred in holding that appellant was entitled to recover only nominal damages, and in rendering judgment in the sum of $1. We think the assignment should be sustained. Appellant, being entitled to recover damages, was entitled to compensation for the actual loss sustained—the market value of the leasehold rights and privileges in the land owned by appellant. The court found, and the record abundantly sustains the finding, that the leasehold value of the land was $1,000 per acre, but gave appellant judgment for only $1. The tract of land embraced 50 acres, of which appellant owned the whole fee to the surface and three-fourths of the oil and mineral rights, Lang being the owner of the other one-fourth oil and minerals rights. Appellant contends that, as the court found the leasehold value to be $1,000 per acre, he should have had judgment for $37,500, that being three-fourths of the value of 50 acres at $1,000 per acre. We think the evidence abundantly shows that $1,000 was the leasehold value of land similarly situated as was this, but there is no proof in the record as to what a three-fourths interest per

acre would or could have been leased, for. We think, in order to warrant a judgment in appellant's favor for any specific sum, the evidence must show appellant was offered that sum, and was willing to accept same, but was prevented by the unlawful acts of appellee. The record does not show that appellant was offered any sum for a lease of his interest, or that he could have leased his three-fourths interest in the oil and mineral rights in said land for any sum. It is not shown that appellant was willing and would have accepted an offer to lease at the rate of $1,000 per acre. It is possible that, under the showings of oil being made so near his land, and the excitement existing in the mind of the public as to the greatness of the oil discovery, and possibility of procuring large sums for leases in that immediate vicinity, he might have refused to lease at that price. We think it was necessary for appellant to have shown that he had opportunity to lease, that he was willing to and would have accepted said opportunity, and what he could have and would have leased his three-fourths interest in the oil and mineral rights in and to said land for at the time alleged. This not being done, and the judgment of the court below not involving any such finding, we conclude that the judgment should be reversed and remanded. and it is so ordered.

Reversed and remanded.