HUGHES *et al.* *v.* FRANKLIN.

(In Banc.  Feb. 10, 1947.)

[29 So. (2d) 79.  No. 36282.]

216

Ernest L. Shelton, of Jackson, and Bee King, of Mendenhall, for appellants.

220

J. Ed. Franklin, Lamar F. Easterling and L. C. Franklin, Jr., all of Jackson, and J. B. Sykes, of Mendenhall, for appellee.

**Griffith, J.,** delivered the opinion of the Court.

Appellants, W. F. Hughes and his brother, W. A. Hughes, were, on October 8, 1943, the owners as tenants in common of the land in Simpson County, Mississippi, here in question. W. A. Hughes was then temporarily in Baltimore, in the State of Maryland. Sometime during the month of September 1943, D. M. Yelverton, who was in the business of obtaining such leases, approached W. F. Hughes at his home in the county where the land is located and offered to purchase an oil, gas and mineral lease on the land consisting of approximately 131 acres. W. F. Hughes informed Yelverton that it would be necessary to communicate with his brother in Baltimore, and this was done by W. F. Hughes, who, in due time, was informed by his brother that it would be satisfactory with him that his brother, W. F. Hughes, make the proposed deal with Yelverton.

W. F. Hughes thereupon, and on the 8th day of October, 1943, went to the office of Yelverton and they arrived at an agreement, and on that day, October 8, 1943, Yelverton drew up the lease, dating it that day. It was promptly sent to the brother in Baltimore for his signature and acknowledgment. The brother in Baltimore promptly signed and acknowledged it and sent it to his brother in Simpson County, who took it to Yelverton, but the Baltimore acknowledgment was not in proper form, as Yelverton thought, and thereupon either the same instrument was returned to Baltimore for a corrected acknowledgment, or a new instrument dated as the original was dated, to wit: October 8, 1943, was sent, the witnesses not being certain as to whether the original was returned or a new instrument, a duplicate of the original, was then sent to Baltimore. The instrument thus last sent was properly signed and acknowledged in Baltimore November 20, 1943, and on arrival in Simpson County was signed and acknowledged by W. F. Hughes on November 26, 1943, and was delivered to and accepted by Yelverton on the latter day.

The only date anywhere in the lease preceding the signatures of the grantors was October 8, 1943, the opening sentence of the lease being, to quote, "This agreement made this the 8th day of October, 1943," and the concluding sentence was, to quote, "In witness whereof this instrument is executed on the date first above written," there being no other date anywhere in the lease instrument, as already mentioned.

The lease was in the standard form commonly in use in this state, and was what is sometimes called an "unless lease" or a delayed rental lease, that is to say, that unless drilling operations are actually begun within one year from the date of the lease, it will expire at the end of that year unless the lessee or his assigns shall pay on or before the expiration of that year, a stipulated annual rental and so on for each successive year through the primary period of ten years.

On December 3, 1943, Yelverton assigned or transferred the lease to appellee, the assignment of transfer stating in its opening recital, to quote: "Whereas on the 8th day of October, 1943, W. F. Hughes" (and naming the original lessors in full) "made and entered into a certain oil lease," etc., and appellee remitted the annual rental due in 1944 on September 16, 1944, stating with his remittance that it was for the annual rental for the period from October 8, 1944 to October 8, 1945. For the annual rental due in 1945, he failed to remit until November 5, 1945, his contention being that it was not due until November 26, 1945, and this by calculating the annual periods from the date of the delivery of the original lease, which was on November 26, 1943, instead of the date mentioned in the lease itself, all as already stated. The lessors decline to accept the tender made on November 5, 1945, on the ground that the lease under its express terms had expired on October 8, 1945, by reason of the failure to renew it by payment on or before October 8, 1945. The controlling question in this case is, therefore, whether the annual renewal date is October 8th of each year or whether November 26th.

Appellee filed his bill on December 3, 1945, praying a decree of the court to the effect that the anniversary date of the lease is November 26th, instead of October 8th; and in furtherance of his bill he alleged that it was by a mutual mistake of the parties to the original lease that the date therein was not recited to be November 26th, instead of October 8th, and averring that it was the intention of the parties in the execution of the original lease that the annual renewal date should be November 26th. The case was heard on full pleadings and upon oral and documentary evidence, but the testimony failed to show that there was any mutual mistake or any mistake at all in the date of the original lease. The great weight of the testimony was that October 8th was the date agreed upon, and that certainly that was the date understood by the lessors. At any rate, the evidence was manifestly

not sufficient to measure up to the requirements as to the quantum thereof essential in cases to reform written instruments. The court held, nevertheless, that inasmuch as the lease did not become effective until November 26th, when it was delivered, the anniversaries of the successive rentals should be calculated from November 26th, and so decreed. In short, although there was insufficient evidence to reform the lease, the court nevertheless, in effect, reformed it.

It is plain, of course, that the lease did not become effective in a legal sense until it was delivered. But it is equally plain that in such a contract, as in others, stipulations for performance periods may be made to run, in the matter of the calculations thereof, from a specified date prior to the date of delivery and with as much freedom to the parties in that respect as they had to contract for long or short periods for performance, an exception being that if the end of the stipulated period for performance has, on the date of delivery, so nearly expired that the grantors cannot then honestly insist upon the stipulated date rather than the date of delivery, the latter may be held to control as was in reality the case in Bettes v. Mid-Texas Petroleum Co., Tex. Civ. App., 243 S. W. 753, relied on by appellee. There is no such case here.

Appellee contends, and not without some force, that, taking parts of his testimony, Yelverton understood that the initial payment of $260 made by him on November 26, 1943, would cover a year's rental from that date, and if such were the case the annual rentals thereafter could not be due before November 26th without cutting off part of the first year for which payment had been made. Of this it might be enough to say that according to the evidence, the lessors did not so understand it, but because of the importance of the question now before us, we pursue the matter further. Mr. Yelverton also testified as follows:

"Q. That lease from the Hughes brothers contains your agreement with the Hughes brothers? A. Yes.

"Q. Were you satisfied with the lease? A. I was.

"Q. Are you satisfied now. A. I am.

"Q. Do you recall the date of the lease? A. Ocotber 8th.

"Q. When the lease was delivered to you and you paid over your money to Mr. Hughes, were you satisfied with that date? A. I was.

"Q. There was no misunderstanding between you and Mr. Hughes about the date? A. No, sir."

He further testified in effect and from experience in a thousand cases, that when a trade is made for such a lease, the lease is drawn up and the date thereof is then inserted in the lease agreement, and that thereafter it is carried or sent around to the various owners whose signatures and acknowledgments are necessary, it being hard in many cases to get all of the signatures at the time. "Q. You start out at the head of the lease and put the date at the head of the lease and then you go out and get your signatures? A. That is correct." Thus the pertinency and evident purposes of the following provision which was contained in this lease, as well as in other standard leases, to quote, "The down cash payment is consideration for this lease according to its terms and shall not be allocated as a mere rental for a period."

We are, therefore, of the opinion that the date carried in the lease itself, to wit, October 8th, is the dominant date, and not the date of delivery. Any other ruling would introduce endless controversy and confusion into this business, now enormous in this state, wherefore we have dealt with the matter more at length than we would otherwise have done.

Reversed, and decree here for appellants.