GREER et al. v. STANOLIND OIL & GAS CO.

STANOLIND OIL & GAS CO. v. GREER et al.

Nos. 4486, 4487.

United States Court of Appeals Tenth Circuit.

Dec. 29, 1952.

---

5. The persons whom plaintiffs seek to substitute under Rule 25(a) (1) have already been substituted under Rule 25(d).

Justin Reid, Santa Fe, N. M. (Seth & Montgomery, Wm. R. Federici, Santa Fe, N. M., L. A. Thompson, Tulsa, Okl., and J. K. Smith, Ft. Worth, Tex., on the brief), for cross-appellant and appellee.

William Sloan, Albuquerque, N. M. (Rodey, Dickason, Sloan, Mims & Akin, John D. Robb, Albuquerque, N. M., on the brief), for appellants and cross-appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellee, Stanolind Oil and Gas Company, brought this suit to quiet its title to an oil and gas lease covering property in San Juan County, New Mexico, and to enjoin defendants, Greer and Wininger, from drilling operations on the said premises. The defendants answered alleging their paramount title under a previous oil and gas lease on the same property from the same lessors, and in the alternative counter-claimed for reimbursement of their costs incurred in the drilling of a well on the property.

Greer's lease commences: "This Agreement, Entered into this the 20 day of May, 1947,". It ends: "In Witness Whereof we sign the day and year first above written." Because the lessors lived in different localities they separately signed and acknowledged the lease on various dates between June 12, and July 15, 1947. The lease was actually delivered to Greer on July 15, 1947, but it was not recorded until July 14, 1948.

This lease is an "unless lease", Paragraph 5 thereof reciting: "If operations for the drilling of a well for oil or gas are not commenced on said land on or before one year from this date, this lease shall terminate as to both parties, unless the lessee shall, on or before one year from this date, pay or tender to the lessor * * * the sum of $320.00 which shall operate as rental and cover the privilege of deferring the commencement of drilling operations for a period of one year."

In June, 1948 the owner of the San Juan County Abstract & Title Company, who was the local agent of Stanolind for the procurement of oil and gas leases, finding no lease of record covering the land involved, approached one of Greer's lessors for the execution of a lease in favor of Stanolind. The lessor then checked the lease and the depository bank, and finding that no delay rentals had been paid by Greer, and no drilling operations having been commenced on the property, concluded Greer's lease had expired by its own terms.

Thereafter the same lessors executed two leases to Stanolind covering the same property involved in Greer's lease, both dated June 23, 1948.

Shortly after the execution of these leases, Hartman, one of the lessors, contacted Greer who said he wanted to pay the delay rentals on his lease. Hartman then informed him that he considered Greer's lease terminated because of the failure to pay timely delay rentals and that another lease had been executed to Stanolind on the same property.

Then Greer, believing that the date of delivery of the lease to him on July 15, 1947 was the date from which to compute the timely payment of delay rentals, deposited a rental payment with the depository bank on July 15, 1948. He made similar deposits on June 10, 1949 and May 8, 1950. None of these payments have ever been accepted by the lessors and all were retained by the bank in a special deposit.

After procuring the advice of counsel, Greer entered into a drilling agreement with Wininger, and on October 26, 1950 drilling operations were commenced on a 40-acre tract included within his lease. These operations were continued until two

days after this suit was filed, when the defendants vacated the premises. The well had then been drilled to a depth of 1510 feet in the Pictured Cliff Formation at a stipulated cost of $17,780.00.

The trial court concluded as a matter of law that Greer's lease expired by its own terms for failure to pay delay rentals as provided in the lease, but when Stanolind refused to pay defendants the costs of drilling the well, the court ordered Stanolind to convey to the defendants its interest in the lease covering the 40-acre drilling site. Judgment was entered accordingly.

Greer and Wininger have appealed from that part of the judgment of the trial court holding that the anniversary and rental paying date is May 20, 1947, as recited in the lease, contending that the operative date is the date of delivery of the lease to Greer by the lessors, or July 15, 1947.

We agree with the trial court. It is of first importance that a contract shall have definitely ascertainable dates of commencement and termination. To that end, those dates should be determinable from the recitations in the contract itself; there should be no room for conjecture or speculation. If, however, the intent of the parties becomes material, it should be gathered from the language of the contract and resort to extraneous facts is justified only if the contract itself creates a patent ambiguity, 12 Am.Jur., Contracts, § 229, Pages 751-3; Provident Life & Accident Ins. Co. v. Hunter, 4 Cir., 165 F.2d 931; Hughes v. Franklin, 201 Miss. 215, 29 So.2d 79.

Obedient to that rule, the courts have generally construed contracts to run from the date they bear and not from the date of delivery. Kishi v. Humble Oil & Refining Co., Tex.Civ.App., 261 S.W. 228; Hughes v. Franklin, supra.

Bettes v. Mid-Texas Petroleum Company, Tex.Civ.App., 243 S.W. 753, and Hinson v. Noble, Tex.Civ.App., 122 S.W.2d 1082, 1083, relied upon by the appellant, demonstrate the necessity for resort to extraneous facts for the ascertainment of the intent of the parties.

The contract in the Bettes case, supra, was dated February 4, 1921. It provided for the erection of a drilling rig on the leased premises within 20 days from that date. In a letter dated February 19 the lessor granted a 10-day extension beyond the twenty days in the contract, and the contract was acknowledged on February 19. The rig was erected on March 21 after a forfeiture had been declared on March 17. If the time to erect the rig is reckoned from the 19th day of February, the date of the letter and acknowledgment of the contract, the contract was not breached. If the time commenced to run from the date of the contract on February 4, the contract was breached. In order to relieve against a forfeiture the trial court held that the contract could fairly be reckoned to commence from the date of the acknowlment of the contract. But aside from the construction of the contract itself, the court was also of the opinion that the evidence presented a question of waiver and estoppel which should have been submitted to the jury.

In the Hinson case, supra, the lease commenced by saying: "Agreement, made and entered into the 6th day of November, 1935", and concluded in the line above the signatures of the signers, "In testimony whereof, we sign, this the 21st day of November, 1935." The facts showed that it was executed and delivered still later. The court was of the opinion that the two conflicting dates in the lease, together with a contemporaneous agreement, rendered the date of the lease "clearly ambiguous and uncertain". The court accordingly construed the date of the contract as commencing after November 21, 1935, resolving the ambiguity against the party responsible for it.

Our lease recites that it was entered into on the 20th day of May, 1947, and that it was signed on that date. The only antecedent to the words "from this date" in the delay rental clause is May 20, 1947. The delivery date is nowhere referred to in the body of the instrument and is ascertainable only by resort to extraneous evidence. There is nothing in the contract to show or to indicate that the parties intended that the contract was not to become effective or operative until delivery. In

short, there is no occasion to go outside of the instrument to ascertain the real intent of the parties.

It may also be of some importance to note that, unlike the Bettes and the Hinson cases, supra, there is no question of waiver and estoppel or of forfeiture here. The unless lease expired by its own terms in the absence of strict compliance and there is no room for equitable amelioration. Phillips Petroleum Co. v. Curtis, 10 Cir., 182 F.2d 122.

Stanolind has cross-appealed from that part of the trial court's judgment which awarded Greer and Wininger the 40-acre drilling site, the effect of which was to allow Greer and Wininger to recover the stipulated costs of drilling the well.

The judgment of the court is undoubtedly based upon the rule that an occupying claimant who in good faith and under color of title constructs or erects improvements upon the premises before his title fails is entitled to recover the value of the improvements to the rightful owner. This is so because an innocent trespasser should be liable only for the actual damages caused by his trespass and the landowner should not be unjustly enriched thereby. 27 Am. Jur., Improvements §§ 6 and 7, Pages 263–5; § 19, Page 273.

The rule is recognized and applied with variations to trespassers who drill and produce oil or gas from premises in good faith and under color of title. See Summers on The Law of Oil and Gas, §§ 23 and 24; Eagle Oil Corporation v. Cohassett Oil Corporation, 263 Mich. 371, 248 N.W. 840; Reimann v. Baum, Utah, 203 P.2d 387; Williamson v. Jones, 43 W.Va. 562, 27 S. E. 411, 38 L.R.A. 694.

█ While some courts do not recognize the distinction between good faith and wilful trespassers, see Shell Oil Co. v. Manley Oil Corporation, D.C.Ill., 50 F. Supp. 21 and Superior Oil Co. v. Harsh, D. C.Ill., 50 F.Supp. 358, the generally accepted view seems to be that the measure of damages for oil produced by a lessee taking possession in good faith under a void or invalid lease is the value of the oil, less the reasonable cost of production. United States v. Wyoming, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590; Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92, 21 A.L. R.2d 373; Miller v. Tidal Oil Company, 161 Okl. 155, 17 P.2d 967, 87 A.L.R. 811; Bailey v. Texas Pacific Coal & Oil Co., 168 Okl. 275, 32 P.2d 709; Champlin Refining Co. v. Aladdin Petroleum Corp., 205 Okl. 524, 238 P.2d 827; Bender v. Brooks, 103 Tex. 329, 127 S.W. 168.

█ As far as we can ascertain, New Mexico has not yet had occasion to consider the plight of an innocent trespasser who enhanced the value of the occupied premises. See Alvarado Mining and Milling Company v. Warnock, 25 N.M. 694, 187 P. 542. However, it is unnecessary for us to anticipate the course it would take, for all courts apparently agree that permanent betterment or enhancement of value of the property trespassed is indispensable to the right of recovery of outlays or expenditures for operations on the premises by an innocent trespasser. And benefit to the rightful owner—not cost to the trespasser is the test of improvement. 27 Am.Jur. §§ 19 and 22, Improvements, Pages 273 and 276; Eagle Oil Corporation v. Cohassett Oil Corporation, supra; Reimann v. Baum, supra; Williamson v. Jones, supra. And the burden is upon the trespasser to prove that his outlay did enhance the value of the property. Reimann v. Baum, supra; Frierson v. Modern Mutual Ins. Co., Tex. Civ.App., 172 S.W.2d 389.

In our case, the proof showed no more than the expenditure of $17,780.00 for the drilling of a well with a showing of gas. There was no proof that the drilling of the well enhanced the value of the lease. Indeed, Stanolind contended that it depreciated it.

It follows that that part of the judgment of the court which awards Greer and Wininger the 40-acre drilling site must be reversed. In all other respects the judgment is affirmed.