BROWN, Justice.
Parsons Leasing, Inc. (“Parsons”), filed a declaratory-judgment action seeking a declaration that Lease 783 remained in full force and effect. The circuit court entered a summary judgment in favor of Parsons. The Alabama Department of Conservation and Natural Resources (“Department”), acting through the director of the State Lands Division, appeals. We reverse and remand.
Parsons was awarded a one-year oil-and-gas lease with the Department for the sum of $75,450. That lease, known as Lease 783, contained the following provisions:
“THIS AGREEMENT is made and entered into on this the 1st day of December, 1992, by and between the STATE OF ALABAMA, acting by and through its Commissioner of the Department of Conservation and Natural Resources, hereinafter called LESSOR, and Parsons Leasing, Inc ...., hereinafter called LESSEE.
[[Image here]]
“3. (a) If actual drilling operations are not commenced on the leased area in good faith on or before one year from the date hereof, this Lease shall terminate as to both parties unless LESSEE on or before the expiration of said period shall pay or tender to LESSOR the sum of One Hundred and %o DOLLARS ($100.60)(hereinafter called ‘rental’), which shall extend for one year the time within which actual drilling operations may be commenced. Thereafter, annually, in like manner and upon like payments or tenders, the commencement of actual drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. Payment or tender of rental may be made by check or draft of LESSEE made payable ..., on or before the rental payment date.
[[Image here]]
“24. (a) If LESSEE shah fail or refuse to make the payment of any sum within thirty (30) days after it becomes due, ... the rights acquired hereunder shall be subject to forfeiture.
[[Image here]]
“(c) Prior to any such forfeiture, LESSOR shall notify LESSEE in writ *768 ing setting out the matters as to which LESSOR considers LESSEE in default. LESSEE shall have forty-five (45) days from date of receipt of said notice within, which to take reasonable action to remedy any such default or to demonstrate to the Commissioner of Conservation and Natural Resources' satisfaction that no such default exists.”
The lease was executed by the parties on February 16,1993.
Parsons did not commence recovery operations on the property within the primary lease term. On February 10, 1994, Parsons mailed a delay rental to the Department to extend the lease for an additional year. The Department never received the rental payment.
On January 30, 1995, the Department notified Parsons that it had no record of receiving delay rentals for 1993 or 1994. The following day, Parsons mailed a payment to the Department for both the 1993 and 1994 delay rentals. On February 20, 1995, Parsons received from the Department its first written notice of default. The Department also returned the delay rental payments that Parsons had mailed on January 31, 1995, stating in its correspondence that the delinquent rental payment had resulted in the automatic termination of the lease. Parsons returned the payment to the Department on March 24, 1995, 32 days after receiving written notice of default.
A dispute ensued over the interpretation of certain terms contained within the lease, specifically: (1) whether the initial delay rental was due on or before December 1, 1993 (the end of the primary lease term) or February 15, 1994 (the last day of the year- measured from the execution of the lease); and (2) whether, pursuant to paragraph 3, Parsons’s failure to make a timely delay-rental payment automatically terminated the lease or whether, pursuant to paragraph 24(c), Parsons was entitled to written notice of default for failure to pay sums due and entitled to 45 days to cure the default.
In entering the summary judgment in favor of Parsons, the trial court held, in pertinent part:
“Both parties cite persuasively from different sections of the oil and gas law treatise, Williams & Myers, Oil & Gas Law, Vol. 3, with respect to the issue of delay rental payments, their timely payment, the consequences of failing to make such payment and the implications of failed good-faith efforts to pay, as well as the need to examine the parties’ intent with respect to the oil and gas contract.
“The Department argues, in essence, that notwithstanding the rather harsh result of forfeiture of a $75,450.00 lease for Parsons’ failure to timely pay [$100.60], the lease is nevertheless automatically terminated, citing Williams & Myers’ basic premise to that effect. Parsons cites equally authoritative language from Williams & Myers on the same subject: ‘[T]he lease shall not expire by reason of nonpayment of rentals where there has been a good faith effort to pay same until after notice of default has been given and an opportunity afforded subsequent to such notice to pay the rental.’ Williams & Myers, Oil and Gas Law, Section 606.6(8), pg.l939.[1]
“This Court must construe any lease ambiguities against the drafter, which is the Department in this case. Parsons made good faith efforts to tender the *769 delay rental payments under the lease. Furthermore, the written provisions of lease paragraph 24(c) plainly required the Department to provide Parsons with written notice of its (the Department’s) non receipt of the first delay rental payment, and forty-five (45) days to cure, before declaring the lease automatically terminated. At the least, the written notice requirement rendered the lease terms ambiguous to the point that this Court must construe them against the drafter, the Department.”
The Department filed a postjudgment motion, arguing that paragraph 27 clearly provided that in case of ambiguity, the lease would be construed in favor of the lessor; the trial court denied the motion.
On appeal, the Department argues that the trial court erred in entering the summary judgment in favor of Parsons because, it says, Parson’s failure to timely tender a rental payment resulted in an automatic termination of the lease. The Department argues that the lease clearly established that the agreement was “made and entered into on this the 1st day of December, 1992.” Thus, it argues, the due date for the delay rental was on or before December 1,1993. We agree.
On the question of ascertaining the date for payment of a delay rental, the leading treatise on oil and gas law, Williams & Myers, Oil and Gas Law, states: “Generally it is held that the date recited by the lease is the base for calculating the rental paying date regardless of the fact that the lease may have been executed and/or delivered at some later date.” 3 Howard R. Williams and Charles J. Myers, Oil and Gas Law § 606.2(2) (1991). In Hughes v. Franklin, 201 Miss. 215, 29 So.2d 79 (1947), the lease bore the date October 8, 1943, but it was not delivered to the parties until November 26, 1943. The initial delay rental was made before October 8, 1944. However, in 1945 the delay rental was tendered after October 8, but before November 26. The Mississippi Supreme Court held that the delay rental had been due on October 8, 1945, the date carried in the lease, not the date of delivery. Similarly, in Greer v. Stanolind Oil & Gas Co., 200 F.2d 920 (10th Cir.1952), the United States Court of Appeals for the 10th Circuit held that delay rental was due on the date the lease bore, not the date it was executed.
Paragraph 3 of the lease, quoted above, states that “[i]f actual drilling operations are not commenced ... on or before one year from the date hereof, this Lease shall terminate as to both parties unless LESSEE on or before the expiration of said period shall pay or tender to LESSOR the sum of One Hundred and 69ioo DOLLARS.” Thus, Parsons was required to submit payment for delay rental on or before December 1, 1993, to extend the primary lease term. It is undisputed that Parsons did not commence drilling operations before the expiration of the lease term; we conclude that Parsons did not attempt to timely tender the delay rental necessary to extend the lease. Parsons tendered payment on February 10, 1994— 72 days after payment was due; thus, the lease automatically terminated on December 1, 1994.
We next address whether the notice-and-demand requirements of Paragraph 24(c) operated to negate the automatic-termination provision of Paragraph 3.
The Department argues that while this is an issue of first impression in Alabama, it is a well-settled principle of oil and gas law that a lease will terminate automatically upon the lessee’s failure to make timely payment of delay rentals, without the necessity of notice by the lessor and a demand for payment. Thus, the Department maintains, notice-and-demand clauses have no effect and are generally held inapplicable to a claim that a lease has been terminated by reason of nonpayment of delay rentals. See Langlois v. Canadian Superior Oil of Cal., Ltd., 23 W.W.R. 401, 8 O. & G.R. 517 (Man.App.Ct.1957); Kugel v. *770 Young, 132 Colo. 529, 291 P.2d 695 (1955); Norris Oil Co. v. Von Glahn, 104 Cal.App.2d 159, 230 P.2d 885 (1951); Lewis v. Grininger, 198 Okla. 419, 179 P.2d 463 (1947); and Steffes v. Allen, 295 Mich. 510, 295 N.W. 245 (1940).
The terras of paragraph 3 clearly provided that the lease would terminate if delay rental was not made on or before December 1, 1993; therefore, a timely rental was a condition precedent to an extension of the primary lease term. It is undisputed that Parsons failed to pay the delay rental on or before December 1, 1993. Parsons admitted that the initial lost delay-rental payment was not made until February 10, 1994, and that the subsequent delay-rental payment was not made until January 31, 1995.[2] Because Parsons failed to satisfy the condition precedent, the lease automatically terminated without the necessity of notice by the Department.
The judgment of the trial court is reversed and the ease is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, LYONS, and ENGLAND, JJ., concur.
SEE, J., concurs specially.
COOK, J., dissents.

. Section 606.6(8) states:
"Many modern leases contain a provision to the effect that the lease shall not expire by reason of nonpayment where there has been a good-faith effort to pay same until after notice of default has been given and an opportunity afforded subsequent to such notice to pay the rental.”
(Emphasis added.) No such provision was contained in this lease. Moreover, the good-faith exception appears to be limited to situations where the lessee was free from fault or negligence, and the default was due to unavoidable accident or mistake, such as making a timely payment' to the wrong party.

. The Department did not accept the late tender of paj'ment. Termination of the lease would have been avoided if the Department had accepted the delinquent delay rental; late acceptance operates to revive a- lease previously terminated by nonpayment. See Day & Co. v. Texland Petroleum, Inc., 786 S.W.2d 667 (Tex.1990).